**Larry L. HATHAWAY, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

**No. 91–3572.**

United States Court of Appeals, Federal Circuit.

Dec. 11, 1992.

Michael P. Heiskell, Johnson, Vaughn & Heiskell, Fort Worth, TX, argued, for petitioner.

Stephanie M. Conley, Atty., Merit Systems Protection Bd., Washington, DC, argued, for respondent. With her on the brief were Mary L. Jennings, Acting Gen. Counsel and David C. Kane, Asst. Gen. Counsel.

Before RICH, Circuit Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.

MICHEL, Circuit Judge.

Larry L. Hathaway petitions for review of the August 16, 1991 final order of the Merit Systems Protection Board (Board) in Docket No. HQ12159010005 adjudicating a Special Counsel complaint for disciplinary action filed pursuant to the Whistleblower Protection Act of 1989 (WPA), Pub.L. No. 101–012, 103 Stat. 16.[1] The Board imposed a 30–day suspension against petitioner as a penalty for engaging in a prohibited personnel practice under 5 U.S.C.A. § 2302(b)(8) (West Pocket Part 1992) by threatening an employee with removal and an unsatisfactory performance rating because of the employee's whistleblowing activity. Because the Board's determination of impermissible retaliation rests on substantial evidence, we affirm.

## BACKGROUND

Mr. Hathaway is a GM–15 Regional Personnel Officer for the General Services Administration (GSA), Region 7. *Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 598 (1991). Mr. Hathaway supervised Harry Sam Livengood, a GM–13 Employee and Labor Relations Officer, and Eddie Ward, a staffing specialist in the Employment and Training Branch of the Personnel Division. *Id.* at 598, 611 n. 18.

On July 31, 1989, Mr. Livengood and Mr. Ward met with members of the Regional Inspector General's (IG's) Office. Mr. Livengood reported to the IG what he perceived to be eight improper discontinued service retirement actions that petitioner had taken, and Mr. Ward supplied information about the appointment of an allegedly unqualified individual (hereinafter "Chadwick action"). *Id.* at 598.

Several days later on August 4, 1989, Mr. Hathaway discussed the Chadwick action and a possible leak to the union of management information with Mr. Livengood and Mr. Ward. After Mr. Ward had left, Mr.

---

1. After the Special Counsel filed a complaint for disciplinary action in this matter, 5 U.S.C.A. § 1215 (West Pocket Part 1992) (authorizing Special Counsel to bring disciplinary actions before the Board), the Chief Administrative Law Judge (CALJ) held a hearing. The CALJ subsequently issued a Recommended Decision, which the Board adopted as modified in its final order of August 16, 1991.

Hathaway told Mr. Livengood that he did not trust Mr. Livengood. *Id.* at 598. According to Mr. Hathaway, the following exchange then occurred:

Mr. Livengood: You cannot trust me.

Mr. Hathaway: What do you mean?

Mr. Livengood: I'm out to get you.

Mr. Hathaway: With Harry?

Mr. Livengood: Yes.

Both men at this time were referring to Harry Dawson, AFGE Council 236 President, to whom management information was allegedly being leaked. *Id.* at 598. Although Mr. Livengood then quickly denied that he was alluding to Harry Dawson, Mr. Hathaway did not believe him. Instead, Mr. Hathaway reported to his supervisor that Mr. Livengood had admitted to being a union leak. *Id.*

Once Mr. Hathaway and his supervisor decided that Mr. Livengood should be reassigned, Mr. Hathaway summoned Mr. Livengood to inform him of the decision. During this meeting, Mr. Livengood told Mr. Hathaway that he had been to the IG,[2] which prompted Mr. Hathaway to arrange a conference with the IG. *Id.* at 599. At the IG's Office, Mr. Hathaway explained that he had lost trust and confidence in Mr. Livengood, and that he believed, based on the earlier admission, albeit by then retracted, that Mr. Livengood was a union

leak. *Id.* Mr. Hathaway described himself as being "emphatic" and possibly "loud"— at one point telling Mr. Livengood to shut up—while in the IG's Office.

Mr. Hathaway and Mr. Livengood continued to have a tense relationship after August 4, 1989. *Id.* at 600. Despite Mr. Hathaway's denials, the Board credited Mr. Livengood's testimony and found that "following [Mr.] Livengood's request for a copy of his 1989 performance appraisal" on October 2, 1989, Mr. Hathaway "told him that he should not expect a highly satisfactory rating the next year and that [Mr. Hathaway] would remove him from Federal service at the conclusion of the Special Counsel's investigation [into prohibited reprisal against a whistleblower]." *Id.* See *id.* at 607–08. Given the circumstances, the Board viewed Mr. Hathaway's statements as threats. *Id.* at 608–09. The Board further determined that the preponderance of the evidence demonstrated that Mr. Livengood's disclosure to the IG about allegedly improper discontinued service retirements was a contributing factor in the threatened personnel actions. *Id.* at 609–10. Finally, the Board determined that clear and convincing evidence did not show that Mr. Hathaway would have made those threats absent Mr. Livengood's protected disclosure. *Id.* at 610.[3]

---

2. The record shows that Mr. Hathaway did not specifically recall when he learned that part of Mr. Livengood's disclosure to the IG concerned allegedly improper discontinued service retirements. Per Mr. Hathaway, Mr. Livengood at the earliest mentioned the retirement disclosure on the way to the IG's Office after Mr. Hathaway had informed him of the reassignment decision.

3. Section 1215 of title 5 defines the procedures that the Special Counsel is to follow to bring a disciplinary action against a federal employee for an alleged prohibited personnel practice, including reprisal, because of certain disclosures to the IG. *See* 5 U.S.C.A. §§ 1215 & 2302(b)(8). But that section does not specify the burden and standard of proof for the element of causation. The Board "adopted the Special Counsel's argument that the evidentiary standards used to determine [2302](b)(8) violations in corrective action cases under 5 U.S.C.A. § 1214(b)(4)(B), a section enacted as part of the WPA, should also be used to determine [2302](b)(8) violations in disciplinary cases brought pursuant to 5 U.S.C.A. § 1215." At 601.

According to the Board, for a *prima facie* case of prohibited whistleblower reprisal under 5 U.S.C.A. § 2302(b)(8), the Special Counsel must prove by a preponderance of the evidence that the whistleblowing was a "contributing factor" to the personnel action. *See* 5 U.S.C.A. § 1214(b)(4)(B)(i). The Board also determined, however, that in disciplinary as in corrective action cases, the charged employee may defeat the government's *prima facie* case by proving by clear and convincing evidence the affirmative defense that the employee would have taken the same personnel action absent the whistleblowing. *Id.* at § 1214(b)(4)(B)(ii). In this case, the Board made findings in accordance with these legal conclusions.

Mr. Hathaway did not challenge the Board's exposition of the law before the Board. Nor did he here. We recognize that after the Board decision and after briefing and argument in this appeal, our court decided *Eidmann v. Merit Sys. Protection Bd.*, 976 F.2d 1400 (Fed.Cir.1992), holding that the standard for causation in disciplinary actions is "significant factor," not, as the Board held here, "contributing factor." *Id.* at

As a result, the Board sustained the Special Counsel's charge that *on or about* October 3, 1989 Mr. Hathaway threatened to remove Mr. Livengood and to give him an unsatisfactory performance rating for the 1989–1990 performance appraisal year.[4] As Mr. Hathaway made the threats "because of [Mr.] Livengood's disclosures to the IG," he committed a prohibited personnel practice in violation of 5 U.S.C.A. § 2302(b)(8)[5]. After weighing in its assessment of a penalty the nature and seriousness of the offense, any adverse impact on the agency's reputation, and Mr. Hathaway's cognizance of the law, job level, past work record, and potential for rehabilitation, the Board ordered Mr. Hathaway to be suspended for 30 days. At 612–13.

Mr. Hathaway petitions for review of the Board's final order. We have jurisdiction pursuant to 5 U.S.C.A. § 1215(a)(4) (West Pocket Part 1992) and 5 U.S.C.A. § 7703(b)(1) (West Supp.1992).

## DISCUSSION

### I.

Congress has defined our standard of review for cases from the Board. We may not set aside the Board's final order unless we determine that it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1988). *See Cheeseman v. OPM*, 791 F.2d 138, 140 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987).

■ Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bradley v. Veterans Admin.*, 900 F.2d 233, 234 (Fed.Cir.1990) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "In order to determine whether the board's finding is supported by substantial evidence, it [is] necessary for the court to 'canvas' the entire record, because '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Spurlock v. Department of Justice*, 894 F.2d 1328, 1330 (Fed.Cir.1990) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). Whether we would agree with the Board's fact findings if we were to review the record *de novo* is therefore irrelevant.

### II.

■ Mr. Hathaway argues that substantial evidence does not support the Board's finding that petitioner actually threatened Mr. Livengood with removal and an unsat-

---

1405. Nothing we say here should be construed to the contrary. Specifically, we do not approve the standard the Board used here. We merely accept the Board's standard for the purpose of deciding this appeal because the standard was not challenged. In any event, application of the significant factor test, instead of the contributing factor test, in this case would not require a different result or even a remand. In this case, as in *Eidmann*, "the Board found sufficient facts to permit this court to affirm its judgment." *Id.* at 1408.

4. In its complaint for disciplinary action, the Special Counsel filed eight counts against Mr. Hathaway, only one of which the Board sustained. The other seven counts are not at issue in the instant petition. The single count in the petition here involves a charge that petitioner engaged in a prohibited personnel practice *on or about* October 3, 1989. That Mr. Hathaway actually made the threats on October 2, 1989 is thus inconsequential.

5. The statute provides in pertinent part:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

\* \* \* \* \* \*

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment *because of*—

\* \* \* \* \* \*

(B) any disclosure ... to the Inspector General of an agency ... of information which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority ...

\* \* \* \* \* \*

5 U.S.C.A. § 2302(b) (West Pocket Part 1992) (emphasis added).

isfactory performance appraisal. In this regard, Mr. Hathaway faults the Board for finding Mr. Livengood the more credible witness and points to various alleged inconsistencies and imprecisions in his testimony. Since the Board credited Mr. Hathaway's recollection of events during his first meeting with Mr. Livengood on August 4, 1989 rather than Mr. Livengood's version, petitioner contends that the Board also had to credit his testimony regarding the October 2, 1989 meeting. Mr. Hathaway's arguments are not persuasive.

With respect to the alleged inconsistencies and imprecisions in Mr. Livengood's testimony, petitioner fails to explain how they are relevant to whether he made the threats on October 2, 1989 and/or are in fact inconsistent. For example, Mr. Livengood's failure to mention an appraisal in response to the question "Did Larry Hathaway in that meeting threaten to give you an unsatisfactory performance appraisal?" does not indicate that Mr. Livengood was inconsistent. Indeed, Mr. Livengood had earlier testified that Mr. Hathaway told him not to expect a highly successful rating the next year. In light of the strained relationship between Mr. Livengood and petitioner at the time, the Board found, and substantial evidence supports, that Mr. Hathaway's statement was a thinly veiled threat of an unsatisfactory performance rating. At 608–09.

Mr. Hathaway further asserts that Mr. Livengood admitted to not remembering a threatened unsatisfactory performance appraisal. Again, such an admission would not undercut Mr. Livengood's testimony because he never claimed that Mr. Hathaway threatened him with an unsatisfactory rating. In addition, we do not agree with Mr. Hathaway's assertion. Mr. Hathaway draws the inference from the following testimony:

Mr. Hathaway: Back to the October 7th [sic] discussion that you had with Larry Hathaway, this was the meeting where you discussed the investigations.

Mr. Livengood: I don't remember.

Mr. Hathaway: That was the one where you're saying that Larry Hathaway told you you were going to receive an unsatisfactory performance rating for 1990.

Mr. Livengood: That's the only note [which refers to a threatened removal] I made of that meeting. I don't remember what else was discussed.

Given the context, however, the Board could properly interpret Mr. Livengood as saying only that he did not remember a discussion concerning "investigations," and as being silent with respect to future performance appraisals. Mr. Hathaway's inference is not the only permissible one; we have no basis to retry the facts in this petition.

Similarly, the Board committed no reversible error by discounting Mr. Livengood's inability to "recall in which of the two meetings the alleged threats were made, and what precipitated the meeting." Brief for Petitioner at 24. To the extent the identity of the meeting is relevant, the record does not show that Mr. Livengood was asked to identify the meeting in which the threats were made. And what precipitated that meeting is irrelevant to whether Mr. Hathaway threatened Mr. Livengood on or about October 3, 1989. On this record, we cannot say that the alleged inconsistencies throughout Mr. Livengood's testimony and his independently tense relationship with Mr. Hathaway establish that Mr. Livengood lacks any credibility, and thus preclude the Board from accepting his account of threats occurring on October 2, 1989.

Nor did the Board err by crediting different parts of Mr. Hathaway's and Mr. Livengood's testimonies. A fact finder is not obliged to accept or reject a witness' testimony *in toto*, but should rather evaluate the testimony in light of other evidence to determine whether and how much of the witness' testimony is credible. *See DeSarno v. Department of Commerce*, 761 F.2d 657, 661 (Fed.Cir.1985) ("That some parts of a witness' testimony may be attacked is a common phenomenon. It supplies no basis, however, for holding that the fact-finder is not entitled to credit other parts of that witness' testimony.").

The Board correctly noted that the threats were consistent with Mr. Hathaway's attitude toward Mr. Livengood. At 607. Of course, Mr. Hathaway's broad denials are self-serving. *See id.* at 607–08. We are also mindful that a presiding official's credibility determinations are "virtually unreviewable." *Hambsch v. Department of Treasury,* 796 F.2d 430, 436 (Fed. Cir.1986) (citations omitted). Accordingly, substantial evidence supports the Board's finding that Mr. Hathaway threatened Mr. Livengood with removal and an unsatisfactory performance appraisal on or about October 3, 1989.

### III.

Petitioner next argues that even if he threatened Mr. Livengood, the record does not contain substantial evidence to support the Board's determination that Mr. Livengood's disclosure to the IG of allegedly improper discontinued service retirements was a contributing factor. *Cf.* 5 U.S.C.A. § 1214(b)(4)(B)(i) (West Pocket Part 1992) ("[T]he Board shall order ... corrective action ... if the Special Counsel has demonstrated that a disclosure described under section 2302(b)(8) was a contributing factor in the personnel action which was taken....").[6] In particular, Mr. Hathaway challenges the existence of the required nexus between the threatened reprisal and the protected disclosure by pointing to purported errors in the Board's interpretation of the evidence. We conclude that each of the alleged shortcomings in the Board's fact findings is without merit.

First, Mr. Hathaway argues that the Board incorrectly inferred that he was angry about Mr. Livengood's retirement disclosure to the IG—the specific disclosure the Special Counsel relied on for its charge of prohibited personnel practice—when there is no direct evidence showing he was concerned with that disclosure. Rather, Mr. Hathaway attributes the change after August 4, 1989 in his attitude and actions toward Mr. Livengood to a loss of confidence and trust because he suspected Mr. Livengood had been a union leak. *See*

Brief for Petitioner at 24–25; Reply Brief at 9.

We are not surprised that there is no direct evidence here of reprisal. The legislative history of the WPA acknowledges that such evidence would be "rare." S.Rep. No. 413, 100th Cong., 2d Sess. 13 (1988). After all, "supervisors do not usually write down or tell other employees of their intent to take prohibited reprisal against an employee." *Id.* Whereas the presence of direct evidence may be fatal to the case of a charged supervisor, its absence therefore does not weigh as heavily against the Special Counsel's case.

The Board in the instant case drew a reasonable inference, which we may not disturb. The Board found that Mr. Hathaway was angry about Mr. Livengood privately going to the IG. At 609. This finding required the Board to synthesize sometimes incongruent testimony and to make credibility determinations. We may not upset the Board's reasonable choices so long as they are supported by substantial evidence. Given his displeasure over Mr. Livengood's whistleblowing activity, petitioner fails to demonstrate why the Board may not specifically infer that petitioner was angry about the retirement disclosure. Whatever other possible inferences may be, they do not affect the reasonableness of the Board's finding, or diminish the substantial evidence that supports it.

Mr. Hathaway further contends that he could not have associated Mr. Livengood with the retirement disclosure because the actions upon which the retirements were based were not within Mr. Livengood's program area. Mr. Hathaway explains that only the processing of retirement applications was in Mr. Livengood's program area. But the record belies his argument. Petitioner testified below, and he concedes in his opening brief, that he knew Mr. Livengood had made the retirement disclosure. Brief for Petitioner at 9. Accordingly, we conclude that petitioner has failed to establish the absence of substantial evidence to support the fact findings underlying the

---

**6.** Again, we note that *Eidmann, supra,* holds that the correct test is "significant factor."

Board's determination that Mr. Livengood's retirement disclosure was the cause of Mr. Hathaway's threats of removal and an unsatisfactory performance appraisal on or about October 3, 1989.

## IV.

Even if the Special Counsel established a *prima facie* case of a violation of 5 U.S.C.A. § 2302(b)(8), *i.e.*, prohibited reprisal against a whistleblower, the Board held the violation may be "avoided ... if it is shown by clear and convincing evidence that the same action would have been taken in the absence of the whistleblowing. 5 U.S.C.A. § 1214(b)(4)(B)(ii); *see also* 135 Cong.Rec. H749 (daily ed. Mar. 21, 1989) (Joint Explanatory Statement)." At 601. Petitioner raises two exceptions to the Board's ruling: (1) application of the "clear and convincing" standard of proof to his affirmative defense violates due process, and in the alternative, (2) substantial evidence does not support the Board's determination that he did not prove by clear and convincing evidence that he would have taken the same action absent Mr. Livengood's retirement disclosure.[7]

With respect to his former argument, the government urges us to decline review of the Board's application of a clear and convincing evidence standard because Mr. Hathaway did not challenge the standard during Board proceedings. Although we agree that we need not address petitioner's standard of proof argument, which is pressed in terms of constitutional due process,[8] we rely on a different reason. We

conclude that even under the preponderance of the evidence standard, which Mr. Hathaway proposes, Reply Brief at 3, there is substantial evidence to support the Board's contrary determination.[9]

■ Mr. Hathaway contends that he never wavered from his August 4, 1989 decision to reassign Mr. Livengood out of Personnel because of Mr. Livengood's admitted leak to the union. *See* Brief for Petitioner at 33 n. 4; Reply Brief at 10–11. As a result, petitioner reasons that he would have made the threats irrespective of Mr. Livengood's disclosure to the IG, and that he thus avoided a violation of 5 U.S.C.A. § 2302(b)(8). The argument is inapposite. The Special Counsel charged Mr. Hathaway with threatening to give an unsatisfactory performance appraisal and to *remove* Mr. Livengood. Nothing in the charge indicates that it is premised on a threat of *reassignment.*

■ Mr. Hathaway also contends that he would still have threatened Mr. Livengood even in the absence of whistleblowing because he suspected Mr. Livengood of being a union leak. But the Board explained that Mr. Hathaway made the threats two months after Mr. Livengood's "admission and retraction of his involvement with the union." At 610. During these two months, the agency did not develop further evidence proving Mr. Livengood was actually a union leak. *Id.* When the agency has no more than suspicion, the only proper action would be a reassignment. *Id.* at 610.[10] Meanwhile, Mr. Hathaway learned

---

**7.** The MSPB did not argue that the defense, specifically mentioned in § 1214, by its omission in § 1215 may simply be unavailable in disciplinary actions. Accordingly, we ·do not decide this question.

**8.** Of course, we are also cognizant of the rule of prudence that "courts should not, unless compelled, decide constitutional questions." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1126 (Fed.Cir.1985) (*in banc*) (Markey, C.J., additional views). *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other

ground upon which the case may be disposed of.").

**9.** We note that the reasoning of *Eidmann* may support an argument that the correct standard of proof of the defense is a preponderance or even that the defense is simply unavailable. But *Eidmann* did not decide either question and neither do we.

**10.** The Board erroneously attributed to Mr. Hathaway's testimony the clarification on the proper action to take against a suspected union leak. As the dominant import of the clarification is that Mr. Hathaway overstepped his bounds, the Board's miscitation did not prejudice the petitioner and thus does not constitute a basis for reversal.

of Mr. Livengood's disclosures to the IG. Even under a preponderance standard, substantial evidence clearly supports the Board's determination that petitioner did not prove his affirmative defense.

Mr. Hathaway's further argument, that Mr. Livengood's statements that Mr. Hathaway could not trust him because he was "out to get" Mr. Hathaway motivated the threats, also fails to present a ground for reversal. Again, Mr. Hathaway made the threats two months after Mr. Livengood warned him about being "out to get" him. The record is unclear on the effect Mr. Livengood's warning actually had on Mr. Hathaway. Meanwhile, new sources of motivation arose. In any event, there is no evidence that such loss of trust would justify threats of removal and an unsatisfactory performance appraisal. Therefore, we discern no reason to upset the Board's determination that petitioner's affirmative defense failed.

## CONCLUSION

Substantial evidence supports the Board's determination that Mr. Hathaway, on or about October 3, 1989, threatened Mr. Livengood with removal and an unsatisfactory performance appraisal because of Mr. Livengood's disclosure to the IG of questionable discontinued service retirements. Nor can Mr. Hathaway avoid this charge because substantial evidence shows that he failed to establish, either by clear and convincing evidence or by a preponderance of the evidence, that he would have taken the same personnel action absent the whistleblowing. Pursuant to the WPA, specifically 5 U.S.C.A. § 1215, Mr. Hathaway is therefore subject to disciplinary action for engaging in a 5 U.S.C.A. § 2302(b)(8) prohibited personnel practice. Accordingly, the final order of the Board imposing a 30-day suspension against petitioner is

AFFIRMED.

\* Circuit Judge Schall took no part in the decision of this case.