**Margaret C. PYLES, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

**No. 94–3360.**

United States Court of Appeals, Federal Circuit.

Jan. 10, 1995.

Peter R. Van Arsdel, Celina, OH, argued for petitioner.

Melissa A. Pollack, U.S. Merit Systems Protection Bd., of Washington, DC, argued for respondent. Mary L. Jennings, Acting General Counsel, Martha B. Schneider, Asst. General Counsel and Anita Marshall, Atty., Merit Systems Protection Bd., were on the brief for respondent. Of counsel were Mary Mitchelson and David M. Cohen, Dept. of Justice, of Washington, DC.

Before RICH, MICHEL, and PLAGER, Circuit Judges.

MICHEL, Circuit Judge.

Margaret C. Pyles appeals from the December 9, 1993 decision of an Administrative Judge (AJ) of the Merit Systems Protection Board (Board), No. CH–831M–94–0102–I–1, dismissing her appeal from the March 25, 1992 reconsideration decision of the Office of Personnel Management (OPM) as untimely filed. The AJ's decision became the final decision of the Board on April 18, 1994, when, over the dissenting opinion of Chairman Erdreich,[1] the Board denied Pyles' petition for review, 61 M.S.P.R. 593. Because the only conclusion the AJ could reasonably have drawn on the record before him was that Pyles had shown a good cause for her untimely filing, his dismissal was an abuse of

1. The Board majority failed to state any reasons for declining to review the decision or explain why Chairman Erdreich's reasons were insufficient.

discretion. Accordingly, we reverse and remand.

## BACKGROUND

Clarence Pyles, a former annuitant, died on December 4, 1986. Survivor annuity benefits for petitioner Margaret Pyles and her disabled daughters began the following day. One of the two daughters had been married from February 1977 to April 1983. Although her marriage and divorce took place prior to her father's death, the OPM interpreted 5 U.S.C. § 8341(a)(3) and (4) (1988) to bar annuity payments to the daughter. The OPM thus sought a refund of what it deemed to be a $12,576.40 overpayment, affirming its initial decision to that effect in a reconsideration decision dated March 25, 1992.

The March 25 reconsideration decision advised Pyles that, should she wish to pursue it, her appeal had to be filed with the Board within 25 days of the date of the decision— that is, by April 19, 1992. Pyles, however, filed her appeal with the Board on November 12, 1993, approximately 19 months late. Because her appeal was untimely filed, the AJ ordered Pyles to show a good reason for the delay to support a waiver of the filing deadline. On November 30, 1993, Pyles, through counsel, submitted three documents demonstrating the cause of her delay: (1) a letter from Dr. John Daniel, a physician who treated her from January to July of 1992; (2) an affidavit from Michael Pyles, her son; and (3) a set of office notes from the physician who treated Pyles for injuries from a fall down the stairs and from an auto accident. Despite the AJ's order that "[n]o evidence or argument on the timeliness issue filed after the close of record will be accepted," the government entered no evidence into the record regarding either the merits of the cause of Pyles' delay or any prejudice the government might suffer if the filing deadline of her appeal were waived.

The entirety of Dr. Daniel's letter, dated November 22, 1993, is as follows:

This is to attest that Margaret Pyles suffers from a degree of dementia which was present in January, 1992. In or around that time, this patient sustained a fracture, the stress of which caused her dementia to increase and she was incapable of making any legal decisions at that time. The dementia has progressed to the point that when I saw her in July, 1992, it was felt necessary for her to go and live in the vicinity of where her son was living so that she could be properly cared for. To reattest the fact that this patient was incapable of making any legal or medical decisions in January through July, 1992, is reaffirmed.

Pet. Br. at A10. The letter does not indicate that Dr. Daniel saw Pyles after July 1992, and her counsel conceded as much at oral argument.

Michael Pyles' affidavit further describes his mother's decline, placing it in the context of her life circumstances prior to January 1992. According to Michael, his mother, a woman of "advanced age," did not "take care of the business affairs of the family" prior to her husband's death in 1986. He began to encourage her to move from West Virginia to Ohio, closer to his own residence in Ohio, after she suffered a fall and broke both an arm and leg in mid–1991. Eventually, with the encouragement of both Michael and Dr. Daniel, Pyles agreed to move to Ohio. After her home in West Virginia was sold, according to Michael, Pyles "sort[ed] through all of her family possessions," "trim[ming] items that fit in a ten room house down to fit a three room apartment." In Michael's opinion, his mother "was physically and mentally impaired to the point that she could not understand the situation" regarding her appeal rights from the OPM's reconsideration decision. When he first learned, in late 1993, of OPM's reconsideration decision and his mother's failure to appeal from it, he sought the legal help that led to the instant petition for review.

In a December 9, 1993 decision, made on the written record without benefit of a hearing, the AJ concluded that Pyles had not fulfilled her burden of establishing that a good reason existed for the untimeliness of her appeal. According to the AJ,

The medical evidence on the appellant's dementia shows that the period of incapacity suffered from that condition lasted only until July, 1992. Even assuming that this

condition constitutes a valid excuse prior to July, 1992, it does not constitute an excuse for the more than one year delay in filing the appeal after July, 1992. *See Sing v. Department of the Navy,* 51 M.S.P.R. 251, 254 (1991) (medical documents that do not address the entire period of the delay do not establish good cause for the entire delay). Moreover, the statement from the appellant's son reflects that the appellant was able to sell her house, move to another state, and "sort through" all her possessions. The evidence of the appellant's implied mental incapacity to file an earlier appeal is belied by this evidence reflecting that during the time period for an appeal the appellant was able to manage her own personal affairs. The appellant also has not explained her failure to have someone else file a timely appeal on her behalf.

Pet. Br. at 19. The Board, over the dissent of Chairman Erdreich, denied Pyles' petition for review of the AJ's initial decision. Pyles then timely filed her appeal to this court.

## DISCUSSION

### I. *Standard of Review*

 We affirm a decision of the Board unless it is found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.[2] 5 U.S.C. § 7703(c) (1988); *Hathaway v. MSPB,* 981 F.2d 1237, 1240 (Fed.Cir.1992). The Board necessarily abuses its discretion when it rests its decision on factual findings unsupported by substantial evidence. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *A.C. Aukerman Co. v. R.L. Chaides Constr.*

*Co.,* 960 F.2d 1020, 1039, 22 USPQ2d 1321, 1333 (Fed.Cir.1992) (in banc).

### II. *Analysis*

 A. The Board's regulations provide that where, as here, a party appeals from an OPM decision that does not set an effective date, the appeal must be filed with the Board within 25 days of the decision's issuance. 5 C.F.R. § 1201.22(b) (1993). If the appeal is not filed within this time period, it will be dismissed as untimely filed unless the petitioner shows "a good reason for the delay." 5 C.F.R. § 1201.22(c) (1993). Upon petitioner's showing of good cause for the untimely filing of her appeal, waiver of the filing deadline is appropriate absent a showing of substantial prejudice to the agency caused by the delay in filing. *Walls v. MSPB,* 29 F.3d 1578, 1583–84 (Fed.Cir. 1994).[3] Because Pyles, by her own admission, filed her appeal outside the limitation period, we need only consider whether the Board reasonably denied her a waiver. We conclude that its denial of the waiver she requested was unreasonable.

 "We have," of course, "often stated that whether the regulatory time limit for an appeal [to the Board] should be waived based upon a showing of good cause is a matter committed to the Board's discretion and this court will not substitute its own judgment for that of the Board." *Mendoza v. MSPB,* 966 F.2d 650, 653 (Fed.Cir.1992) (in banc) (collecting cases). We are also aware that "[t]he burden is on the petitioner to demonstrate excusable delay." *Id.* Neither principle, however, requires us to leave uncorrected a decision wherein the AJ abused his discretion by denying a waiver after the petitioner has, like Pyles, more than carried her burden of showing a good reason for the filing delay and the government has placed no evidence to the contrary in the record.

---

**2.** "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Hathaway,* 981 F.2d at 1240 (citing *Consolidated Edison* ).

**3.** Thus, as we have implicitly held, where the petitioner shows good cause for the delay in filing, the agency makes no effort to show sub-

stantial prejudice caused by the delay in filing, and the AJ abuses his or her discretion by dismissing the appeal as untimely filed, the proper disposition on appeal is to reverse the decision and remand the case for a hearing of the underlying appeal on its merits. *Walls,* 29 F.3d at 1584; *Anderson v. DOJ,* 999 F.2d 532, 535 (Fed. Cir.1993); *Ceja v. United States,* 710 F.2d 812, 814 (Fed.Cir.1983).

**B.** The documentary evidence that Pyles submitted was unrebutted. It concededly demonstrated that, at the time the OPM issued its reconsideration decision in March 1992, Pyles suffered dementia. While Dr. Daniel's letter expressly addressed the existence of increasingly severe dementia between January and July 1992, no evidence was placed in the record suggesting that Pyles' dementia was cured or had otherwise abated between July 1992 and November 1993. Moreover, in his November 1993 letter, Dr. Daniel's stated that Pyles "suffers" from "a degree of dementia," present in January 1992, that had "progressed" as of July 1992, suggesting that he thought Pyles still suffered dementia in November 1993 when he wrote his letter.

The nature of dementia is such that, absent rebuttal evidence, one could not reasonably conclude that Pyles' condition simply improved with time. Both medical and English language dictionaries, of which we take judicial notice, indicate that the loss of intellectual faculties denominated "dementia" are due to progressive organic brain diseases. For example, THE MERCK MANUAL OF DIAGNOSIS AND THERAPY (15th ed. 1987) defines "dementia" as follows:

> A structurally caused permanent or progressive decline in several dimensions of intellectual function that interferes substantially with the individual's normal social or economic activity. One million Americans are presently incapacitated by dementia, which can occur at any age and follow any injury severe enough to impose widespread damage on the cerebrum's association cortical areas.

*Id.* at 1336. In addition, the disorder "generally is an insidious, slowly progressive, untreatable condition." *Id.* at 1339. *Accord* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 442–43 (27th ed. 1988) ("an organic mental disorder characterized by a general loss of intellectual abilities involving impairment of memory, judgment, and abstract thinking as well as changes in personality," but "not includ[ing] loss of intellectual functioning caused by clouding of consciousness (as in delirium) nor that caused by depression or other functional mental disorder (pseudodementia)"); RANDOM HOUSE UNABRIDGED DICTIONARY 529 (2d ed. 1993) ("severe impairment or loss of intellectual capacity and personality integration, due to loss of or damage to neurons in the brain"); STEDMAN'S MEDICAL DICTIONARY 410 (25th ed. 1990) ("a general mental deterioration due to organic or psychological factors; characterized by disorientation, impaired memory, judgment, and intellect, and a shallow labile affect"); WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 360 (1984) ("Irreversible deterioration of intellectual faculties with accompanying emotional disturbance resulting from organic brain disorder.").

Because the record contains unrebutted evidence that Pyles suffered dementia at least through July 1992 and no medical evidence whatsoever tending to show that she improved after that time, the AJ's finding that "the period of incapacity suffered from that condition lasted *only until* July 1992" is flatly inconsistent with the very nature of dementia. It is unsupported by substantial evidence or, indeed, any at all, and denial of the waiver based on this unsupported finding was an abuse of discretion. Where, as here, a party is diagnosed with a medical condition that is by its nature "permanent or progressive" in severity, it will be assumed to continue to exist after the date of diagnosis absent rebuttal evidence of record to the contrary. Thus, the only finding the AJ could reasonably have made on this record is that Pyles suffered dementia from January 1992 to the time the appeal was filed. Nor could the AJ reasonably have discounted Dr. Daniel's conclusion that Pyles' dementia was so severe as to make her unable to handle legal and business affairs. There was simply no contrary evidence.

The AJ's comment that Pyles' ability to sort and discard furniture established her mental ability to handle her legal affairs despite Dr. Daniel's express conclusion to the contrary is also unreasonable on its face. Similarly, the AJ's comment that Pyles and Michael's affidavit have "not explained her failure to have someone else file" is hardly logical. If Pyles could not understand her appeal options and her legal circumstances,

how could she understand that she should ask someone else to file the appeal for her?

If the AJ had held a hearing and received further evidence, a basis of his findings might have been provided. But on the documents submitted, by Pyles alone, there is no evidentiary basis for the AJ's analysis; instead, there is only a strained attempt to find in Pyles' submissions a basis for finding her competent to handle her own legal affairs in 1992–93. For example, his conclusion that Pyles' dementia "lasted only until July 1992" is based on an unreasonable reading of Dr. Daniel's letter. Similarly, the AJ takes individual events described in her son's affidavit, such as sorting through furniture, totally out of context and ignores the rest of what Michael Pyles swore to in order to support the assertion that Pyles "was able to manage her own personal affairs." For example, the AJ strains credulity past the breaking point when he relies on Pyles' move to Ohio as evidence of her competence when both Dr. Daniel and Michael swore, in unrebutted submissions, that the move was occasioned precisely by her *lack* of competence.

The government, like the AJ, relies primarily on an analogy to the Board's decision in *Sing v. Department of the Navy.* In *Sing,* the petitioner offered a medical statement indicating that he suffered from major depressive episodes and multiple chemical sensitivity syndrome to show a good reason for the untimely filing of his appeal. 51 M.S.P.R. at 253. The Board dismissed his petition, reasoning that the submitted medical documents did not address the entire filing delay, and that any implied mental incapacity was belied by Sing's ongoing correspondence with the agency whose actions were contested in the appeal. *Id.* at 254. The case at bar, however, is hardly comparable to *Sing.* First, fairly read, Dr. Daniel's unrebutted letter effectively covers the entire period of the delay. Second, depressive episodes are by definition temporary, treatable, and non-organic, while dementia is permanent, untreatable, and organic. Third, there is no evidence of record suggesting that Pyles kept in regular contact with the OPM

while at the same time failing to timely appeal its adverse reconsideration decision. Fourth, her ability to choose which of her personal belongings to bring with her to Ohio cannot, despite the AJ's comment and the government's exhortations to the contrary, be analogized to Sing's ability to continue to negotiate a settlement agreement with the agency that fired him. The government's attempt to justify the AJ's refusal to waive Pyles' filing deadline on the basis of alleged factual similarity to *Sing* is thus utterly unpersuasive. It is unfortunate that counsel for the Board apparently felt compelled to make so far-fetched an analogy. Nor can we accept counsel's assertion at oral argument that the Board's need to manage and limit its caseload somehow justifies the Board's refusal to find excusable delay here. The Board's standard on waiver of the deadline, whatever it is, must be applied consistently across cases; a waiver cannot be denied merely because the Board's docket may be increasing, as suggested by the Board's counsel at oral argument. Nor can our standard of what constitutes an abuse of discretion by the Board when it has denied a waiver.

## CONCLUSION

Because the finding that Ms. Pyles did not suffer severe dementia from August 1992 to November 1993 was not supported by substantial evidence, the only finding the AJ could reasonably have made on this record is that Pyles suffered dementia from January 1992 to the time the appeal was filed. Accordingly, she showed good cause for her delay as required under 5 C.F.R. § 1201.22(c) (1993). Because Pyles showed good cause for her untimely filing, and the OPM made no effort to show substantial prejudice flowing from the delay, we hold that the denial of the waiver was an abuse of discretion. We therefore reverse the Board's dismissal and remand for further proceedings on the merits of her appeal from the OPM's reconsideration decision.[4]

*REVERSED AND REMANDED*

4. We of course express no opinion on the lawfulness of the OPM's reconsideration decision, as the issue is not before us or in any way relevant to the issue of excusable delay.

COSTS

The government to bear costs.