106 F.3d 427
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Johnny GOLDTOOTH, Petitioner,
v.
MERIT SYSTEMS PROTECTION BOARD, Respondent.
 No. 96-3215.
 United States Court of Appeals, Federal Circuit.
 Jan. 30, 1997.
 
 Before NEWMAN, MICHEL, and SCHALL, Circuit Judges.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Johnny Goldtooth petitions for review from the March 5, 1996 final decision of the Merit Systems Protection Board (Board) in Goldtooth v. Department of the Interior, 69 M.S.P.R. 662 (1996). The July 21, 1995 initial decision of the Administrative Judge (AJ) dismissing Mr. Goldtooth's appeal as untimely became the final decision of the Board on March 5, 1996 pursuant to 5 C.F.R. § 1201.113(b) when the Board denied Mr. Goldtooth's petition for review. We affirm.
 
 DISCUSSION
 I.
 
 2
 Mr. Goldtooth is a fifty-five year old Navajo Indian, who lives on the Navajo reservation near Teesto, Arizona. The dominant language on the reservation is Navajo, and Mr. Goldtooth has attained only a sixth-grade education. Therefore, he has difficulty speaking and writing English and relies on others to assist him in communicating with English-speaking people. Mr. Goldtooth worked as a school bus driver for the Bureau of Indian Affairs, Department of the Interior (agency), at a nearby school.
 
 
 3
 Effective November 18, 1994, the agency removed Mr. Goldtooth from his position based upon a charge of misconduct involving two students of the school. Mr. Goldtooth was informed of his right to appeal to the Board. Pursuant to 5 C.F.R. § 1201.22(b), he had thirty days within which to file the appeal. The notice of removal also informed Mr. Goldtooth that, in the alternative, he could appeal the removal action through negotiated grievance procedures by contacting Mr. Benjamin C. Smith of the National Federation of Federal Employees Council.
 
 
 4
 Mr. Goldtooth asked a relative, Ms. Peggy Scott, to complete the appeal form and to write a cover letter to the Board. Mr. Goldtooth also contacted Mr. Smith and sought his assistance. Mr. Smith agreed to call Mr. Goldtooth to arrange a meeting, and he instructed Mr. Goldtooth to bring his appeal form and cover letter to the meeting. However, Mr. Smith never called, and Mr. Goldtooth's attempts to reach him were fruitless. Eventually, on December 9, 1994, Ms. Scott mailed the appeal form and letter to Mr. Smith. Mr. Goldtooth continued to try to reach Mr. Smith but was unsuccessful in his efforts. The appeal form and letter never reached the Board. Mr. Goldtooth first learned in January of 1995 that his appeal materials had not been filed.
 
 
 5
 Thereafter, Mr. Goldtooth sought legal assistance to file his appeal, but his efforts were hampered because the nearest attorneys were located two to two and a half hours away. After being denied assistance from a legal services office in Window Rock, Arizona, and from at least one attorney whom he visited in Gallup, New Mexico, he finally retained counsel in Flagstaff, Arizona. His appeal was filed on May 23, 1995, over five months after it was due.
 
 
 6
 In her initial decision, the AJ found the appeal untimely under 5 C.F.R. § 1201.22(b). In addition, the AJ determined that Mr. Goldtooth had not shown good cause for his delay. The AJ concluded that, to the extent either Mr. Smith misled Mr. Goldtooth, or Mr. Goldtooth misunderstood Mr. Smith's instructions, he did not establish good cause. The AJ noted that after Mr. Goldtooth learned that Mr. Smith had not filed the appeal, he made no attempt to mail the form himself or to enlist Ms. Scott's help.
 
 
 7
 On petition for review, the Board, in a split 2-1 decision, reasoned that Mr. Goldtooth may have been diligent in his efforts until January of 1995, when he learned that Mr. Smith had not filed his appeal. The Board concluded, however, that for the period between January and May 23, 1995 (when the appeal was filed), his efforts at obtaining legal assistance did not amount to due diligence sufficient for purposes of waiving the filing deadline. Therefore, the Board denied Mr. Goldtooth's petition for review.
 
 II.
 
 8
 This court must affirm the Board's decision unless Mr. Goldtooth establishes that it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994).
 
 
 9
 No dispute exists that Mr. Goldtooth did not timely file his appeal under 5 C.F.R. § 1201.22(b), and therefore the only issue is whether the deadline should have been waived for good cause under 5 C.F.R. § 1201.22(c). Upon a showing of good cause by the petitioner, a filing deadline may be waived absent a showing of substantial prejudice to the agency caused by the delay in filing. Pyles v. Merit Systems Protection Board, 45 F.3d 411, 414 (Fed.Cir.1995). However, we have " 'often stated that whether the regulatory time limit for an appeal [to the Board] should be waived based upon a showing of good cause is a matter committed to the Board's discretion and [we] ... will not substitute [our] own judgment for that of the Board.' " Id. (quoting Mendoza v. Merit Systems Protection Board, 966 F.2d 650, 653 (Fed.Cir.1992) (in banc)).
 
 
 10
 As noted above, the Board found that Mr. Goldtooth did not act diligently after he learned that his appeal had not been filed. Mr. Goldtooth argues on appeal that his special circumstances, especially his limited education, lack of facility with English, and geographic isolation, contributed to his inability to file the appeal on time. However, the Board fully considered these circumstances in finding that he had failed to establish good cause for the delay.
 
 
 11
 Mr. Goldtooth relies on Powell v. Zuckert, 366 F.2d 634 (D.C.Cir.1966), for the proposition that he did not "sleep on his rights" due to his "limited education and geographic isolation." Powell is inapposite to the present case. In Powell, the Court of Appeals for the District of Columbia Circuit held that the district court erred in finding that Powell's claim, delayed for 16 months, was equitably barred by laches due to Powell's poverty and repeated attempts to find an attorney. 366 F.2d at 636-38. We have held that cases involving laches are not persuasive with respect to cases involving MSPB regulatory time limits. Philips v. United States Postal Serv., 695 F.2d 1389, 1391 (Fed.Cir.1982) ("Laches is an equitable defense separate from any statutory or regulatory time limitation."). Moreover, Powell's search for a lawyer occurred only after he had pursued the administrative appeal process without a lawyer. Powell required a lawyer to navigate the complicated process of obtaining judicial review in a district court of the administrative decision of the Board of Appeals and Review of the Civil Service Commission. Mr. Goldtooth, by contrast, was not required to navigate a complicated pleading process to file his administrative appeal. The only question then is whether Mr. Goldtooth was diligent in pursuing his appeal under the regulatory time limit.
 
 
 12
 Considering all the evidence that was before it, we cannot say that the Board abused its discretion in concluding that Mr. Goldtooth did not show good cause for the delay between January and May of 1995 in filing his appeal. The Board has consistently held that inability to find a representative does not establish good cause for waiver of a filing deadline. DeGraaf v. Department of the Navy, 55 M.S.P.R. 343, 346 (1992); Block v. Defense Logistics Agency, 40 M.S.P.R. 198, 199-200, aff'd, 889 F.2d 1099 (Fed.Cir.1989). After discovering that Mr. Smith had not filed his appeal, Mr. Goldtooth took over four months to locate counsel and have the appeal filed. We are not prepared to say that it was unreasonable for the Board to take the position that Mr. Goldtooth was not diligent during this period. The record indicates Mr. Goldtooth visited only two attorneys during these four months. Even given the distance for Mr. Goldtooth to travel, it is reasonable to consider such a lack of effort not diligent. Moreover, Mr. Goldtooth's application was complete after it was returned from Mr. Smith, and it would have been relatively simple for him to put the application on file, perhaps with the assistance of Ms. Scott, while he searched for an attorney. The application is designed to be completed by a non-lawyer. See Caballero v. Department of the Army, 59 M.S.P.R. 298, 302 (1993) (inexperience with legal matters not good cause for waiver of the Board's deadlines). Since we will not substitute our own judgment for that of the Board in this type of situation, and since Mr. Goldtooth has not shown that the Board abused its discretion in not waiving the filing deadline, the Board's decision must be affirmed.
 
 
 13
 No Costs.
 
 
 14
 NEWMAN, Circuit Judge, dissenting.
 
 
 15
 I respectfully dissent. The majority opinion, by justifying the refusal of the MSPB to hear Mr. Goldtooth's appeal, points up the failure of the MSPB to perform its statutory function. Mr. Goldtooth had a reasonable explanation of the delay in filing his appeal to the Board. The MSPB's discretion to waive untimeliness is not standardless, and in this case its failure of exercise was contrary to the purpose of the grant of discretion. As discussed in Alonzo v. Department of the Air Force, 4 M.S.P.R. 180, 184 (1980), when equity and good conscience require waiver of untimeliness, the Board will exercise its discretion to do so.
 
 
 16
 The Board was required to consider all of the circumstances: the stigma of the charge on which Mr. Goldtooth was dismissed; the timely preparation of his appeal documents; the critical role of his union representative in failing to file the appeal; the distance of the Navajo Reservation from the nearest city; Mr. Goldtooth's language difficulties; and his diligent search for counsel when he learned that the appeal had not been filed.
 
 
 17
 When a person is charged with socially abhorrent behavior, the loss of one's job on that ground is viewed as confirmation of the accusation. The charge of improper behavior with schoolgirls is of community concern. Mr. Goldtooth's petition states that his daughters are suffering public ridicule. The denial of an appeal, when the board has discretion to receive the appeal, must take cognizance of such special factors. Perhaps Mr. Goldtooth's actions warranted removal; but to deny him a "day in court" on the circumstances of this case is a negation of the Board's obligations. When there is a reasonable explanation for tardy filing, and when equity and good conscience warrant a hearing, the Board is authorized to waive untimeliness.
 
 
 18
 In Alonzo the Board stated that "any doubt about whether good cause has been shown should be resolved in favor of the appellant." Alonzo, 4 M.S.P.R. at 186. This principle has disappeared from the panel majority's analysis. The rulings of the Board majority and the panel majority simply give notice that Alonzo will not be followed, and that untimeliness before the Board is a factor of rigidity and strict construction. Such construction is contrary to legislative intent and precedent. Thus I must, respectfully, dissent from the panel's affirmance of the Board's decision.
 
 
 19
 The panel majority does not mention the events leading to Mr. Goldtooth's removal. In October 1993 Mr. Goldtooth, driver of a school bus, disciplined two twelve-year-old girls; one girl was walking on top of the seats while the bus was moving, and the other was leaning over the driver's seat in order to play the bus radio. The principal of the school informed Mr. Goldtooth that one of the girls and her mother complained that Mr. Goldtooth had "touched" the girl. Mr. Goldtooth agreed, not knowing that "touched" was a euphemism for inappropriate sexual touching. The principal immediately removed Mr. Goldtooth as bus driver and reassigned him to facility maintenance duties, where his performance was rated as "fully successful." Almost a year after the incident, the school principal gave Mr. Goldtooth notice that he would be removed from employment for "repeated incidents of disgraceful misconduct involving a female student entrusted to his care."
 
 
 20
 Mr. Goldtooth states by affidavit that he touched the girls' arms and shoulders in efforts to discipline them and get them to sit down. He states that he was unaware that the principal was asking whether he had inappropriate contact with the girls. Mr. Goldtooth states that the allegations and his ensuing removal damaged his character and injured his family in the community.
 
 
 21
 Mr. Goldtooth prepared a timely notice of appeal to the MSPB with the assistance of an English-literate cousin. As agreed with his union representative, Mr. Smith, he sent the appeal documents to Mr. Smith for review and mailing to the MSPB. Mr. Smith did not mail the notice of appeal, and did not so inform Mr. Goldtooth. In January 1995 Mr. Goldtooth learned that Mr. Smith had failed to mail the appeal documents. It was quite reasonable for Mr. Goldtooth then to conclude that he needed the assistance of a lawyer to cope with not only the loss of his job but now these additional events and the missed deadline. The Reservation was over two and a half hours' drive from the nearest cities. Mr. Goldtooth made contact with a legal services agency that apparently caused delay and provided no assistance, and he made at least two trips before he found counsel. The appeal reached the MSPB five months after its due date.
 
 
 22
 The Board and this court postulate that Mr. Goldtooth could have acted without a lawyer, or found a lawyer sooner. Perhaps so. But the question is whether he acted reasonably, and whether he must be deprived of all appeal opportunity: "[P]olicy considerations counsel against dismissals for untimely filing and militate for providing employees with a hearing on the merits of their appeals." Walls v. Merit Sys. Protection Bd., 29 F.3d 1578, 1582 (Fed.Cir.1994). This policy is set in the authorizing legislation. See Senate Rep. No. 969, 95th Cong., 2d Sess. 24, 51 (1978), reprinted in 1978 U.S.C.C.A.N. 2723, 2746, 2773).
 
 
 23
 Thus, upon a showing of good cause, waiver of the filing deadline is appropriate absent substantial prejudice to the agency due to the filing delay. Pyles v. Merit Sys. Protection Bd., 45 F.3d 411, 414 (Fed.Cir.1995); Walls, 29 F.3d at 1584. Factors to consider in determining whether there was good cause include
 
 
 24
 the length of the delay; whether appellant was notified of the time limit or was otherwise aware of it; the existence of circumstances beyond the control of the appellant which affected his ability to comply with the time limits; the degree to which negligence by the appellant has been shown to be present or absent; circumstances which show that any neglect involved is excusable neglect; a showing of unavoidable casualty or misfortune; and the extent and nature of the prejudice to the agency which would result from waiver of the time limit.
 
 
 25
 Walls, 29 F.3d at 1581 (quoting Alonzo, 4 M.S.P.R. at 184). In good cause determinations "broad principles of justice and good conscience" must be applied. Alonzo, 4 M.S.P.R. at 184. Indeed, contrary to the interpretation by the panel majority, the principles stated in Powell v. Zuckert, 366 F.2d 634 (D.C.Cir.1966), wherein the court ruled that Mr. Powell was not barred by laches due to his 16-month delay in appealing his dismissal while he sought money to hire an attorney, apply equally to this case. As set forth in Alonzo, 4 M.S.P.R. at 184:
 
 
 26
 If the employee gives a reasonable excuse for the delay, such excuse should be accepted by the presiding official, absent a showing of substantial prejudice to the agency caused by the delay in filing.
 
 
 27
 The administrative judge found that there was "basically no evidence that the appellant's limited education and lack of facility in English contributed to his untimely filing." That finding is contrary to the record, which showed that Mr. Goldtooth needed and sought assistance from English speakers and writers at every stage. In dissenting from the Board's decision, Vice Chair Slavet stated that:
 
 
 28
 Mr. Goldtooth's good faith and persistent attempts to cooperate with the agency, respond to the charges and seek adequate representation combined with his isolation of geography, language, community and culture and the further aggravation of that isolation within his community by the notorious nature of the charges against him, constitute good cause to waive the filing deadline.
 
 
 29
 Goldtooth, 69 M.S.P.R. at 667.
 
 
 30
 The issue before the Board was not the merits of the charges: it was simply whether Mr. Goldtooth could get a hearing. The Alonzo standards require no more than a "reasonable excuse," which was undoubtedly presented. Mr. Goldtooth's lack of a formal education and his language difficulties explain his actions in entrusting the filing to his union representative, an action criticized by the panel majority. When the filing deadline was missed, it was surely reasonable for Mr. Goldtooth to think that he needed legal assistance. The personal and community prejudice to the employee due to the nature of the charge, and the absence of any prejudice whatsoever to the agency, indeed, the delay of a year before the agency action, when added to the other mitigating factors, weigh strongly in favor of waiver. There is no contrary weight. Upon these circumstances the Board did not meet its obligation to exercise its discretion as contemplated by statute. I must dissent from this court's endorsement of the Board's failure to meet its obligation to the system of federal employment.