UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

ROBERT LANCE MILLER,
　　　　　　Appellant,

　　　　v.

DEPARTMENT OF DEFENSE,
　　　　　　Agency.

DOCKET NUMBER
PH-0752-14-0757-I-5

DATE: August 2, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Ralph B. Pinskey, Esquire, Harrisburg, Pennsylvania, for the appellant.

James Vietti and Lundi McCarthy Shafiei, Washington, D.C., for the
　　agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1　　　　The appellant has filed a petition for review of the initial decision, which affirmed his removal for failure to meet medical qualifications. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review.  Except as expressly MODIFIED as to the charge analysis, the appellant's disability discrimination defenses, and the appellant's restoration claim, we AFFIRM the initial decision.

## BACKGROUND

¶2　　The appellant was an AD-0083-07 Police Officer for the agency's Pentagon Force Protection Agency (PFPA), stationed at the Raven Rock Mountain Complex in Adams County, Pennsylvania.  *Miller v. Department of Defense*, MSPB Docket No. PH-0752-14-0757-I-1, Initial Appeal File (IAF), Tab 4 at 18, Tab 5 at 20.  The duties of a PFPA Police Officer are arduous and hazardous, and the position is subject to Office of Personnel Management (OPM)-approved medical standards under 5 C.F.R. § 339.202.  IAF, Tab 5 at 10-25, Tab 7 at 146-68.

¶3　　On November 2, 2011, while performing a physical fitness test at work, the appellant suffered a meniscal tear in his left knee.  IAF, Tab 7 at 10, 45.  On December 29, 2011, the appellant underwent surgery, and on January 11, 2012, he returned to full-time limited duty.  *Id*.  The appellant's treating physician, Dr. Gregory Hanks, released him to return to work without restrictions, effective February 1, 2012.  *Id*. at 14.  The appellant subsequently underwent a return-to-duty examination through work, and on March 5, 2012, he was

medically cleared to return to full duty. *Id*. at 16. On May 2, 2012, the appellant took and passed without incident the same physical fitness test that had caused his knee injury back in November 2011. *Miller v. Department of Defense*, MSPB Docket No. PH-0752-14-0757-I-2, Appeal File (I-2 AF), Tab 33 at 4.

¶4    Meanwhile, the Office of Workers' Compensation Programs (OWCP) ruled the appellant's condition compensable, and he received continuation of pay and wage loss compensation for his absences through his January 11, 2012 return to work. I-2 AF, Tab 28 at 4-17, 25-33, 61. On June 25, 2012, the appellant, at the behest of his attorney, was examined by another orthopedic surgeon, Dr. Arthur Becan. IAF, Tab 7 at 22. The appellant complained of pain, instability, and occasional swelling and locking of his left knee, as well as difficulty performing ordinary tasks, standing, walking, and running for extended periods. *Id*. at 23. After a physical examination, Dr. Becan opined that the appellant had a 13% impairment to the lower left extremity as a result of his November 2, 2011 injury, and that the appellant had reached maximum medical improvement. *Id*. at 24-27. With this medical evaluation as support, the appellant submitted a claim to OWCP for a schedule award. I-2 AF, Tab 29 at 78; Hearing Transcript (HT) at 180-81 (testimony of the appellant).[2]

¶5    While reviewing the appellant's schedule award claim, OWCP perceived some discrepancies in his file, and it reached out to the agency for clarification. I-2 AF, Tab 29 at 88. In doing so, OWCP advised the agency that Dr. Becan's evaluation seemed to contradict the appellant's previous return to full duty, and noted that the information in his report indicated that the appellant "may have significant issues with his knee that could affect his job performance." I-2 AF,

---

[2] In several places, the hearing transcript contains the phrase "schedule of work." HT at 95, 98, 100, 102, 111, 140, 180-81 (testimony of the appellant), 271 (testimony of the Medical Review Board Chair). In context, it appears to us that there was an error in the transcription, and that "schedule of work" should read "schedule award" wherever it appears.

Tab 29 at 88.  Nevertheless, on October 9, 2012, OWCP granted the appellant a schedule award based on a 13% permanent partial impairment and notified the agency of the award.  I-2 AF, Tab 28 at 39-41; *see* 5 U.S.C. §§ 8106-8107.

¶6        Also on October 9, 2012, the agency determined, based on Dr. Becan's evaluation, that the appellant was unable to perform the full range of his essential job duties.  It placed him in a "Medically Not Cleared status" and scheduled a return-to-duty examination for October 26, 2012.  IAF, Tab 7 at 29; I-2 AF, Tab 29 at 89-91, 98.  The examination was conducted by Dr. Mary Ann Hollman, the PFPA Medical Advisor.  IAF, Tab 7 at 30.  Dr. Hollman noted a misalignment of the joint, clicking and instability, muscle atrophy, reduced motor strength, and a painful and asymmetric gait.  *Id*. at 6.  Based on the physical examination and the appellant's reported history, she found that he did not meet medical standards.[3]  *Id*. at 30.  The agency placed the appellant in a light duty assignment. I-2 AF, Tab 30 at 7-9.  The appellant's case was then submitted to the PFPA Medical Review Board for a final decision.  IAF, Tab 7 at 40.  On January 15, 2013, the Medical Review Board issued its final decision, notifying the appellant that he failed to meet the PFPA musculoskeletal system standards, that he was unable to safely and effectively perform his duties, that his condition was not correctable within a reasonable time period, and that there was no basis for waiving the standards.  *Id*. at 40-41.

¶7        Subsequently, OWCP referred the appellant's case for a second opinion examination, to get clarification on whether the appellant's November 2, 2011 knee injury still required active treatment, whether the appellant was capable of performing in his Police Officer position, and whether there were any

---

[3] The day before the agency-conducted return to duty examination, the appellant was examined by Dr. Hanks, who recommended that the appellant return to duty without restrictions.  IAF, Tab 7 at 31.  The appellant provided the agency with a generic form to this effect, but he did not provide the agency with Dr. Hanks's examination notes. *Id*. at 6.

non-industrial injuries noted since the date of the compensable injury. IAF, Tab 7 at 42. The examination was conducted on March 26, 2013 by another orthopedic surgeon, Dr. Robert Draper, who found the appellant's knee to be stable and flexible, and the overall examination to be "quite benign." *Id*. at 44-48. Although he diagnosed the appellant with mild osteoarthritis in his left knee, Dr. Draper concluded that no additional treatment was required and that the appellant could return to full duty.[4] *Id*. at 47-49.

¶8    The appellant forwarded Dr. Draper's report to the Medical Review Board, which reconsidered his case but, on May 7, 2013, reaffirmed its prior decision that the appellant failed to meet the PFPA musculoskeletal system standards. IAF, Tab 5 at 38. After unsuccessful efforts to place the appellant in another position within his medical restrictions, on September 11, 2013, the agency proposed his removal for "Failure to Meet Medical Standards," based on the January 15, 2013 decision of the Medical Review Board. IAF, Tab 5 at 4-7, Tab 7 at 40-41. After the appellant responded to the proposal, both orally and in writing, on May 13, 2014, the agency issued a decision removing him effective May 17, 2014. IAF, Tab 4 at 18-25. Around the time of his removal, the appellant filed a notice of recurrence with OWCP. I-2 AF, Tab 28 at 63-71. On June 6, 2014, OWCP acknowledged receipt of the appellant's notice and requested more information. *Id*. at 82-86. The appellant failed to provide all of the information that OWCP requested, and on July 24, 2014, OWCP denied his claim for recurrence.[5] *Id*. at 87-91.

---

[4] After receiving Dr. Draper's report, OWCP proposed to terminate the appellant's workers' compensation benefits on the basis that the appellant was no longer suffering from a work-related injury. I-2 AF, Tab 28 at 58-59. However, OWCP rescinded its proposal, and the record does not reveal what exactly became of the appellant's original claim. *Id*. at 60.

[5] The record does not reveal whether the appellant appealed OWCP's determination.

¶9        The appellant filed a Board appeal, contesting the merits of the action and raising affirmative defenses of disability discrimination (status-based and failure to accommodate) and denial of due process.  IAF, Tab 1 at 4, 6; *Miller v. Department of Defense*, MSPB Docket No. PH-0752-14-0757-I-4, Appeal File (I-4 AF), Tab 29 at 1-8, Tab 31 at 3-9; *Miller v. Department of Defense*, MSPB Docket No. PH-0752-14-0757-I-5, Appeal File (I-5 AF), Tab 5 at 3-11.  He also argued that the agency violated his restoration rights under 5 C.F.R. part 353. I-4 AF, Tab 29 at 8-9.

¶10       After a hearing, the administrative judge issued an initial decision affirming the appellant's removal.  I-5 AF, Tab 7, Initial Decision (ID).  Weighing the conflicting medical evidence in light of the agency's standards, he sustained the charge.  ID at 7-13.  The administrative judge further found that the appellant failed to prove his affirmative defenses or his restoration claim, and that the removal penalty was reasonable under the circumstances.  ID at 14-26.

¶11       The appellant has filed a petition for review, contesting the merits of the charge and renewing his affirmative defenses of denial of due process and disability discrimination (failure to accommodate).  Petition for Review (PFR) File, Tab 1 at 6-29.  The appellant requests, in the alternative, that the appeal be remanded for the administrative judge to take additional evidence on whether the condition that caused him not to meet the PFPA medical standards was compensable.  *Id*. at 29-31.  The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response, as well as a motion for leave to file additional evidence related to his restoration claim.  PFR File, Tabs 3, 6.

**ANALYSIS**

The charge is sustained.

¶12       In an appeal of an adverse action under 5 U.S.C. chapter 75, the agency bears the burden of proving by preponderant evidence that its action was taken

for such cause as would promote the efficiency of the service. *MacDonald v. Department of the Navy*, 4 M.S.P.R. 403, 404 (1980); 5 C.F.R.§ 1201.56(b)(1)(ii). To meet this burden, the agency must prove its charge, establish a nexus between the charge and the efficiency of the service, and demonstrate that the penalty imposed was reasonable. *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997). However, even if the agency carries this burden, the action may not be sustained if the appellant shows that it was taken in violation of his right to due process or was based on disability discrimination. 5 U.S.C. §§ 2302(b)(1)(D), 7701(c)(2)(B); *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681 (1991); *see* 5 C.F.R. § 1201.56(b)(2)(i)(C).

¶13    In this case, the agency charged the appellant with failing to meet the PFPA's OPM-approved medical standards. IAF, Tab 5 at 4. Specifically, the agency alleged that the appellant did not meet the PFPA musculoskeletal system standards. IAF, Tab 5 at 4, Tab 7 at 40. The PFPA medical standards are, for the most part, not precisely quantifiable, and the particular medical conditions discussed therein are generally not described as automatically disqualifying. IAF, Tab 7 at 150-68. Rather, the medical standards exist to aid the PFPA Medical Advisor in making objective determinations, on a case-by-case basis, as to an individual's ability to perform the full range of his essential duties without undue risk to himself or others. *Id.* at 147. Importantly, the medical standards are subject to clinical interpretation by the Medical Advisor, in light of her knowledge of the job requirements and environmental conditions in which the individual must work. *Id.* The musculoskeletal standards themselves provide that any condition that adversely affects an individual's movement, agility, flexibility, strength, dexterity, or coordination, or his ability to accelerate, decelerate, or change directions efficiently, will require additional screening. IAF, Tab 7 at 161. This includes arthritis, if there is limited joint motion or pain. *Id.*

¶14    In finding that the appellant failed to meet the agency's medical standards, the administrative judge applied the legal standard set forth in 5 C.F.R.

§ 339.206, which provides that "a history of a particular medical problem may result in medical disqualification only if the condition at issue is itself disqualifying, recurrence cannot be medically ruled out, and the duties of the position are such that a recurrence would pose a reasonable probability of substantial harm." After weighing the available medical evidence in light of the appellant's job duties and the nature of the Police Officer position, the administrative judge found that the agency proved its charge. ID at 6-13.

¶15 On petition for review, the appellant argues that the agency failed to prove the charge under 5 C.F.R. § 339.206. He disputes the administrative judge's analysis, arguing that the agency failed to prove that his medical condition is itself disqualifying or that recurrence cannot be ruled out. PFR File, Tab 1 at 12-21. However, while this appeal was pending on petition for review, the Board issued a precedential decision clarifying that the standard set forth in 5 C.F.R. § 339.206 only applies when an employee was removed "solely on the basis of medical history," as opposed to a current medical condition. *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 10-15. The Board explained that a removal is based solely on medical history if the only basis for concluding that the employee is medically unable to perform the core duties of his position is the fact that his medical records reflect that, at some time in the past, he was classified as having, was examined for, or was treated for the medical condition or impairment in question. *Id.*, ¶ 12.

¶16 The appellant in this case was not removed based on his medical history. Rather, he was removed based on physical difficulties that he was currently experiencing due to several interrelated, ongoing, and progressively worsening knee problems in both knees. IAF, Tab 5 at 4, Tab 7 at 4-6, 40. In particular, it is undisputed that the appellant had been suffering from osteoarthritis (degenerative joint disease) in his knees long before his November 2, 2011 injury. *Miller v. Department of Defense*, MSPB Docket No. PH-0752-14-0757-I-3, Appeal File (I-3 AF), Tab 4 at 19, 23, 28, 32, 34, 36-40, 44; I-4 AF, Tab 23 at 55,

126-27, 260, 262. When an individual is diagnosed with a medical condition such as this one, which is by its nature permanent or progressive in severity, it will be assumed to continue to exist after the date of diagnosis absent rebuttal evidence to the contrary. *Haas*, 2022 MSPB 36, ¶ 17 (quoting *Pyles v. Merit Systems Protection Board*, 45 F.3d 411, 415 (Fed. Cir. 1995)). There is no such evidence in this case. To the contrary, the medical evidence shows that the appellant's osteoarthritis has continued to worsen over time. I-4 AF, Tab 23 at 125-27.

¶17 Because the appellant's removal was not based solely on his medical history, the charge should not be analyzed under standard set forth in 5 C.F.R. § 339.206. Rather, to prove its charge the agency must establish either a nexus between the appellant's medical condition and observed deficiencies in his performance or conduct, or a high probability, given the nature of the work involved, that his condition may result in injury to himself or others. *Haas*, 2022 MSPB 36, ¶ 15. Although the administrative judge applied what we have now determined to be the incorrect standard to the agency's charge, we find that remand is unnecessary because the record is fully developed on the relevant issues. *See id*, ¶ 20 (citing *Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 27 (2016)).

¶18 The agency in this case does not appear to argue that the appellant exhibited any actual performance or conduct deficiencies related to his knee condition or otherwise, and we see no evidence in the record that would support such a finding. Instead, the agency argues that, given the nature and duties of the Police Officer position, there was a high probability that the appellant's knee condition could result in injury to himself or others. I-5 AF, Tab 6 at 6-7. We agree.

¶19 The medical evidence in this case consists of examination notes and clinical findings made by the four physicians discussed above: Dr. Hanks (the appellant's treating physician and orthopedic surgeon), Dr. Becan (the orthopedic surgeon who examined the appellant in support of his application for a schedule award), Dr. Hollman (the agency's Medical Advisor), and Dr. Draper (the orthopedic

surgeon who conducted the second opinion examination for OWCP). To the extent that the findings and opinions of these four physicians differ, we assess their probative value based on "such factors as whether the opinion was based on a medical examination, whether the opinion provides a reasoned explanation for its findings as distinct from mere conclusory assertions, the qualifications of the expert rendering the opinion, and the extent and duration of the expert's familiarity with the treatment of the [appellant's] condition." *Chavez v. Office of Personnel Management*, 6 M.S.P.R. 404, 417 (1981). We agree with the administrative judge that the clinical findings of Doctors Hanks, Becan, and Hollman are largely consistent and convey that the appellant was suffering significant impairment in his knees, particularly the left one. ID at 12; IAF, Tab 7 at 6, 23-27, I-3 AF, Tab 4 at 19-25, 28-34. Dr. Draper's assessment was the outlier; he found the appellant's knee condition to be unremarkable, and he found no indication for further treatment or diagnosis. IAF, Tab 7 at 47-48.

¶20        Although we find no basis to question Dr. Draper's qualifications, we agree with the administrative judge that his opinion is entitled to less weight than those of the other three physicians. ID at 11-13. Not only was Dr. Draper's assessment inconsistent with the assessments of the other three physicians, but unlike Dr. Hanks, Dr. Draper formed his opinion after only a single examination. *See Tan-Gatue v. Office of Personnel Management*, 90 M.S.P.R. 116, ¶ 11 (2001) (observing that medical conclusions based on a long familiarity with a patient are of greater weight than those based on a brief association or single examination), *aff'd per curiam*, 52 F. App'x 511 (Fed. Cir. 2002). Furthermore, both Dr. Hanks and Dr. Hollman were highly critical of Dr. Draper's report, and it appeared to them that his assessment was based on an incomplete examination and incomplete review of the appellant's medical history. I-4 AF, Tab 23 at 153-58, 291-97. Dr. Draper's report is inconsistent with the subjective complaints that the appellant made to both Dr. Hanks and Dr. Becan about pain in his knees, locking

and buckling, and difficulty performing many ordinary functions that involve stresses on the knee. IAF, Tab 7 at 23, 26; I-3 AF, Tab 4 at 19, 23, 28, 30, 32.

¶21     We also agree with the administrative judge that, notwithstanding the value of his clinical findings, Dr. Hanks's opinion that the appellant could return to full duty merits little weight. ID at 12-13. As the administrative judge correctly found, Dr. Hanks was never notified of the PFPA Police Officer medical standards, he had never seen the appellant's position description, he was unfamiliar with the appellant's specific job duties and work environment, and he based his return-to-duty recommendation entirely on the appellant's own description of those duties and the appellant's subjective assessment of whether he could perform them. ID at 12; I-4 AF, Tab 23 at 68-72, 74, 99-101. We also observe that, as the appellant's treating physician, it was not Dr. Hanks's job to promote the efficiency of the Civil Service; rather, his job was to promote the health of the appellant.

¶22     Dr. Hanks's willingness to allow the appellant to return to duty "with no restrictions and see how things go" may have been sound medical advice, but it says little about the appellant's reliability in an emergency situation, which was the agency's specific concern. IAF, Tab 4 at 19-20, Tab 5 at 4-5; I-2 AF, Tab 4 at 23; HT at 237-38, 253, 284-85 (testimony of the Medical Review Board Chair). In contrast to this recommendation, Dr. Hanks repeatedly advised the appellant that he may need to seek an occupational change because of his progressively worsening knee condition. *Id*. at 30, 33. For these reasons, we credit the findings of the Medical Review Board, which was not only thoroughly briefed by Dr. Hollman on the appellant's medical condition, but was also familiar with the Police Officer position and the PFPA musculoskeletal standards. IAF, Tab 7 at 4-7, 40; HT at 194-96, 211-14 (testimony of the Medical Review Board Chair).

¶23     Although the appellant's actual experience of his job may have involved relatively low levels of physical exertion, we agree with the administrative judge that the PFPA physical and medical standards are in place to ensure that Police

Officers are able to protect life and property in rare emergency situations regardless of whether such exertions might be required during a typical day on the job. ID at 11; I-5 AF, Tab 6 at 7; HT at 20-27, (testimony of the Pentagon Police Site Supervisor), 237-38, 283 (testimony of the Medical Review Board Chair). For these reasons, we find that the agency has established a high probability that, given the responsibility of a PFPA Police Officer to put forth maximum physical exertion in an emergency situation, the appellant's knee condition may result in injury to himself or others. We accordingly affirm, as modified to apply the reasoning above, the administrative judge's determination that the agency proved its charge of failure to meet medical standards.

<u>The appellant did not prove his affirmative defenses of disability discrimination.</u>

¶24    As stated above, the appellant raised affirmative defenses of disability discrimination under both reasonable accommodation and status-based theories. I-4 AF, Tab 31 at 3-9. In his initial decision, the administrative judge found that the appellant failed to prove his disability discrimination claims because he failed to show that he is an individual with a disability within the meaning of 42 U.S.C. § 12102(1) and 29 C.F.R. § 1630.2(g)(1). ID at 14-22. We disagree, and we find that the appellant has shown that he is disabled under 42 U.S.C. § 12102(1)(A) and 29 C.F.R. § 1630.2(g)(1)(i), because his knee condition substantially limits him in one or more major life activities. Specifically, Dr. Becan's June 25, 2012 medical report documents that the appellant's knee pain causes him difficulty with, among other things, walking, ordinary household chores, and basic self-care, such as washing and dressing. IAF, Tab 7 at 23. The appellant does not deny reporting these problems to Dr. Becan in June 2012, the agency does not contest the accuracy of the report, and the record shows that the appellant's knee condition has been deteriorating since then. HT at 104-08 (testimony of the appellant); I-4 AF, Tab 23 at 125-27. Although not every impairment constitutes a "disability" within the meaning of the Americans with Disabilities Act (ADA), an impairment need not prevent or significantly or severely restrict the individual

from performing a major life activity in order to be considered substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ii). Rather, an impairment constitutes a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. The term "substantially limits" must be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 29 C.F.R. § 1630.2(j)(1)(i). It is not meant to be a demanding standard, and should not require extensive analysis. 29 C.F.R. § 1630.2(j)(1)(i), (iii). In light of the broad meaning of the term "disability," we find that the appellant's knee condition easily meets the definition because it substantially limits him in the major life activities of walking, self-care, and operation of the musculoskeletal system. *See* 29 C.F.R. § 1630.2(i)(1) (setting forth a nonexhaustive list of major life activities). For these reasons, we agree with the appellant that his knee condition is disabling under 42 U.S.C. § 12102(1)(A) and 29 C.F.R. § 1630.2(g)(1)(i). PFR File, Tab 1 at 22-24.

¶25        Nevertheless, in order to prevail on a disability discrimination claim under either a status-based or reasonable accommodation theory, an appellant must show not only that he is disabled, but also that he is a "qualified" individual with a disability, i.e., that he can perform the essential functions of the position that he holds or desires with or without reasonable accommodation. *Haas*, 2022 MSPB 36, ¶¶ 28-29; *see* 42 U.S.C. § 12112(a). We find it undisputed that one of the essential functions of PFPA Police Officer, as set forth in the position description, is "to take decisive and immediate action in emergency situations such as riots, demonstrations, terrorist attacks and hostage situations." IAF, Tab 5 at 20. For the reasons explained above, we find that the appellant's knee condition precludes him from performing such emergency duties at a satisfactory level. We see no obvious accommodation that the agency could provide the appellant that would allow him to perform these functions, and the appellant has not proffered any suggestions in this regard. We therefore find that the appellant

is not a qualified individual with a disability with respect to the PFPA Police Officer position.

¶26   In the absence of a reasonable accommodation that would allow an employee to perform the essential functions of his current position, an agency may offer reassignment to a vacant funded position at or below the appellant's current grade level as an accommodation of last resort. *Angel v. Office of Personnel Management*, 122 M.S.P.R. 424, ¶ 9 (2015).  On petition for review, the appellant argues, correctly, that the agency failed to conduct an adequate search for vacant funded positions to which he might be reassigned.  PFR File, Tab 1 at 25-29.  Specifically, it appears that the agency restricted its search to vacant funded positions within the PFPA, rather than considering all available Department of Defense positions, as it should have done.  I-2 AF, Tab 30 at 42, 46; HT at 51 (testimony of testimony of the Pentagon Police Site Supervisor); *see Sanchez v. Department of Energy*, 117 M.S.P.R. 155, ¶ 18 (2011).  Nevertheless, regardless of whether the agency conducted an adequate search for a position to which the appellant could be reassigned before removing him, the appellant still bears the ultimate burden of proving that there was a position the agency would have found and could have assigned him to if it had looked.  *Jackson v. U.S. Postal Service*, 79 M.S.P.R. 46, 53-54 (1998).  The appellant has made no such showing here and has therefore not shown that he was a qualified individual with respect to any vacant funded position to which he could have been reassigned.  *See Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 17 (2014).  Because the appellant has not shown that he is a qualified individual with a disability, we find that he has not proven either his reasonable accommodation or status-based disability discrimination claims.  *See Haas*, 2022 MSPB 36, ¶¶ 30-31.

The appellant did not prove his due process affirmative defense.

¶27   An agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment

constitutes an abridgement of his constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond.  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).  The reply opportunity may not be an empty formality, and the deciding official should have authority to take or recommend agency action based on the reply.  *Diehl v. Department of the Army*, 118 M.S.P.R. 344, ¶ 12 (2012).  In other words, to the extent that there are viable alternatives to a proposed adverse action, due process requires that the employee be afforded an opportunity to invoke the discretion of a deciding official with the authority to select such alternatives.  *See Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 28 (2014).

¶28      In this case, the appellant argued that the agency violated his due process rights because the deciding official lacked the authority to overturn the Medical Review Board's determination that he failed to meet PFPA medical standards.  I-5 AF, Tab 5 at 3-4.  However, the administrative judge found that the deciding official's role was not limited to rubberstamping the proposal and that the deciding official had the authority not to sustain the charge or to take other measures alternative to removal.  ID at 21-22.

¶29      On petition for review, the appellant disagrees with the administrative judge's analysis, reiterating that the deciding official lacked the authority to overturn the Medical Review Board's determination.  PFR File, Tab 1 at 10-12.  However, even if the deciding official lacked authority to overturn the decision of the Medical Review Board and substitute his own finding that the appellant was medically qualified, we find that this does not equate to a violation of due process.  Rather, we find that this situation is analogous to a removal for failure to maintain a security clearance.  A deciding official's lack of authority to overturn a clearance determination does not mean that due process requirements have not been met because due process does not demand that the deciding official consider alternatives that are prohibited, impracticable, or outside management's purview.  *Buelna*, 121 M.S.P.R. 262, ¶ 27.  Nor does due process require that the

deciding official have the unfettered discretion to take any action he believes is appropriate. *Putnam v. Department of Homeland Security*, 121 M.S.P.R. 532, ¶ 12 (2014). To the extent that there may be viable alternatives to a proposed action, an employee has a due process right to invoke the discretion of a deciding official with the authority to select such alternatives. *Buelna*, 121 M.S.P.R. 262, ¶ 28. For the reasons explained in the initial decision, we agree with the administrative judge that the deciding official in this case had such authority and that the appellant had a full and fair opportunity to invoke his discretion on the matter, ID at 22.

¶30    The appellant also argues that the agency denied him due process by failing to identify the specific medical diagnosis underlying the Medical Review Board's determination. PFR File, Tab 1 at 6-10. However, this argument is not properly before the Board because the appellant has raised it for the first time on petition for review without showing that it is based on evidence previously unavailable despite his due diligence. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016). In any event, it appears that this newly raised due process argument is based on the legal standard set forth in 5 C.F.R. § 339.206, which, as explained above, does not apply in this case.

We decline to disturb the administrative judge's nexus and penalty findings.

¶31    The appellant does not directly challenge the administrative judge's nexus determination, and for the reasons explained in the initial decision, we agree that the agency has shown the requisite nexus between its charge and the efficiency of the service. ID at 24; *see Lara v. Mine Safety and Health Administration*, 10 M.S.P.R. 554, 556 (1982) (finding a nexus between the appellant's loss of an eye and the performance of his duties as a mine inspector because an agency "need not wait for the appellant to cause injury to himself or others because of his vision limitation, as long as the likelihood of such an event is reasonably foreseeable"). Nor does the appellant directly contest the administrative judge's finding that the removal penalty was reasonable under the circumstances, and we

see no reason to disturb that finding on review.  ID at 24-26; *see D'Leo v. Department of the Navy*, 53 M.S.P.R. 44, 51 (1992) (finding that removal for physical inability to perform promotes the efficiency of the service).

We decline to remand the appeal for the submission of additional medical evidence.

¶32      On petition for review, the appellant argues that the evidence is equivocal on whether his removal was based on a compensable injury, and to the extent that it was, he has restoration rights under 5 C.F.R. part 353, subpart C.  PFR File, Tab 1 at 29-31.  After the record on review closed, the appellant filed a motion for leave to submit additional evidence on the issue, in the form of a letter from Dr. Hanks supporting his assertion that his failure to meet medical standards was due, at least in part, to chondromalacia patellae, a condition that OWCP had previously accepted as compensable in connection with the appellant's wage loss compensation award.  PFR File, Tab 7; I-2 AF, Tab 28 at 16.

¶33      We agree with the appellant that the record evidence is not entirely clear on whether his failure to meet medical standards, and subsequent removal, was due to a work-related injury, a non-work related condition, or both.  Although the administrative judge found that the appellant's failure to meet medical standards was due to his congenital osteoarthritis and not to any compensable injury, we find that the evidence on this point is not so straightforward.  ID at 23.  In particular, we acknowledge the undisputed deposition testimony of Dr. Hanks, who opined that the appellant's November 2, 2011 meniscal tear may have caused his preexisting and previously undiagnosed osteoarthritis to become symptomatic. I-4 AF, Tab 23 at 75-77.  Although OWCP found that the appellant failed to show that his removal was attributable to a recurrence of his compensable injury for purposes of wage loss compensation, I-2 AF, Tab 28 at 87-88, this may not necessarily preclude the Board from finding that the appellant's removal was "substantially related to" his compensable injury for purposes of restoration, *see Ruppert v. U.S. Postal Service*, 8 M.S.P.R. 593, 595 (1981) (holding that an

employee is entitled to restoration rights when his separation from service either resulted from or was substantially related to a compensable injury).

¶34 Nevertheless, to the extent that the appellant is attempting to claim a denial of restoration as a partially recovered individual for the period postdating his removal, we find nothing in the record to indicate that he made a request for restoration during this time period.[6] *See Cronin v. U.S. Postal Service*, 2022 MSPB 13, ¶ 12 (setting forth the jurisdictional elements of a restoration appeal for a partially recovered individual, including that appellant make a nonfrivolous allegation that the agency denied his request for restoration). We therefore find that, regardless of whether the appellant's removal was substantially related to his compensable injury, the Board would lack jurisdiction over any potential restoration claim in the context of the instant appeal. *See Wright v. U.S. Postal Service*, 62 M.S.P.R. 122, 126 (1994) ("[T]he agency never denied the appellant restoration because the appellant never directly requested it."), *aff'd*, 42 F.3d 1410 (Fed. Cir. 1994) (Table). For this reason, we decline to remand the appeal for further adjudication, and we deny the appellant's motion to submit additional evidence on review.

¶35 To the extent that the administrative judge found that the appellant's removal was not substantially related to his compensable injury, we vacate that finding and dismiss the appellant's restoration claim for lack of jurisdiction on the alternative ground that the appellant failed to make a nonfrivolous allegation that the agency denied his request for restoration. If, in the future, the appellant requests restoration and the agency denies it, our findings here will not preclude him from filing a new restoration appeal at that time and introducing additional

---

[6] Even if the appellant otherwise meets the definition of "physically disqualified" under 5 C.F.R. § 353.102, more than 1 year passed between the date of his most recent OWCP award and the date of his removal, so it would appear that he would have the restoration rights of a partially recovered individual. *See Mendenhall v. U.S. Postal Service*, 74 M.S.P.R. 430, 436-37 (1997); 5 C.F.R. § 353.301(c).

evidence concerning the relationship between his compensable injury and his removal. However, we do not purport to make any finding at this time on whether the appellant would be able to establish jurisdiction over a future restoration appeal. *See* 5 U.S.C. § 1204(h) ("The Board shall not issue advisory opinions.").

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  <u>5 U.S.C. § 7703</u>(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you</u>

receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:        /s/ for
                                    Jennifer Everling
                                    Acting Clerk of the Board

Washington, D.C.