# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JOHANNA H. ESTES, | DOCKET NUMBER |
| Appellant, | DC-1221-18-0573-W-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE:  January 5, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Neil C. Bonney, Esquire, Virginia Beach, Virginia, for the appellant.

Bud Davis, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction.  For the reasons discussed below, we GRANT the petition for review, REVERSE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

**BACKGROUND**

During the time period relevant to this appeal, the agency employed the appellant as the Director of the Audit Professional Standards Division within Regulatory Audit (RA), a component of the Office of Trade at the Bureau of Customs and Border Protection (CBP).[2]  Initial Appeal File (IAF), Tab 1 at 1, Tab 4 at 12.  In this position, she supervised the Audit Policy Branch, the Continuing Professional Education (CPE) Branch, and the Quality Assurance (QA) Branch.  IAF, Tab 12 at 12-13.

According to the appellant, she met with the Executive Director of RA on July 18, 2017, for a briefing regarding a reorganization of RA Headquarters and he told her that it would be effective in 6 days, on July 24, 2017.  IAF, Tab 11 at 20.  After the briefing, on July 19, 2017, the appellant emailed the Deputy Executive Assistant Commissioner (DEAC), the Executive Assistant Commissioner (EAC), the Executive Director, and her supervisor regarding her concerns about the effect of the reorganization on RA's ability to carry out its mission and requesting a meeting with the DEAC.  *Id*. at 22, 33-34.  According to the appellant, on or about July 20, 2017, she refused her supervisor's instruction to assign a CPE employee to perform a QA assignment review and to document her inevitable failure, which would set her up for a performance-based removal, and objected to her supervisor's instruction to document the failure of an unqualified employee who was to be moved into the QA Branch Chief position.  *Id*. at 7-8, 12, 23-24.  The agency ultimately did not implement the RA reorganization.  *Id*. at 23; IAF, Tab 12 at 5-6.

After seeking corrective action from the Office of Special Counsel (OSC) and receiving a March 28, 2018 notice of closure, the appellant timely filed the instant IRA appeal and requested a hearing.  IAF, Tab 1.  The administrative judge informed the appellant of her burden of proof on jurisdiction and directed

---

[2] According to the agency, the Audit Professional Standards Division is now the Audit Performance and Excellence Division.  IAF, Tab 4 at 12-13.

her to submit evidence and argument on the issue. IAF, Tab 8. In response, the appellant alleged that, in July 2017, she disclosed gross mismanagement when she informed the Executive Director, EAC, and DEAC, among others, that the reorganization plan was "unworkable" and would "eliminat[e] the employees necessary to carry out the mission of the [QA] Branch." IAF, Tab 11 at 4-5, 11-12. She also alleged that she disclosed a violation of the collective bargaining agreement and merit systems principles when she objected to her supervisor's instruction to document the failure of an unqualified employee who would be moved into the QA Branch Chief position and to assign a QA project to a non-QA employee and then document her failures. *Id*. at 11-12. She alleged that, although the agency did not complete the reorganization, the Executive Director and her supervisor began retaliating against her shortly after her disclosures of gross mismanagement and "illegal personnel actions" by sending her a July 29, 2017 hostile email, issuing her an October 30, 2017 letter of counseling and expectations, removing her from the day-to-day responsibilities of two of the three branches under her supervision, lowering her performance rating, excluding her from RA weekly management meetings, and subjecting her to harassment and a hostile work environment. *Id*. at 13-16.

Without holding the appellant's requested hearing, the administrative judge issued an initial decision finding that, although the appellant exhausted her administrative remedy with OSC, she failed to nonfrivolously allege that she made any protected disclosure. IAF, Tab 13, Initial Decision (ID) at 3-8. Thus, he dismissed the appeal for lack of jurisdiction. ID at 8.

The appellant has filed a petition for review of the initial decision, and the agency has responded in opposition. Petition for Review (PFR) File, Tabs 1, 3.

## ANALYSIS

Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted her

administrative remedies before OSC and makes nonfrivolous allegations of the following: (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action as defined by 5 U.S.C. § 2302(a).[3] *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 U.S.C. §§ 1221(e)(1), 2302(b)(8).

<u>The administrative judge properly found that the appellant exhausted her administrative remedy as to the claims raised in this appeal.</u>

The Board may only consider those disclosures, activities, and personnel actions that the appellant raised before OSC. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 9 (2016). The substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. Here, we agree with the administrative judge that the appellant exhausted the claims raised in this appeal. ID at 3. Specifically, in a September 11, 2017 OSC complaint and subsequent correspondence, the appellant informed OSC that, in retaliation for disclosing concerns regarding the Executive Director's handling of the RA reorganization and for objecting to instructions to harm employee's careers, her supervisor and/or the Executive Director issued her a July 29, 2017 "counseling or reprimand email," issued her a letter of counseling and expectations, lowered her performance rating, removed significant management responsibilities from her, left her out of meetings, harassed her, and subjected her to a hostile work environment. IAF, Tab 1 at 9-38.

---

[3] The relevant events occurred after the December 27, 2012 effective date of the WPEA. Pub. L. No. 122-199, § 202, 126 Stat. 1465, 1476. Therefore, we have applied the WPEA to this appeal.

<u>The appellant made a nonfrivolous allegation of a protected disclosure.</u>

A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of fact that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno*, 123 M.S.P.R. 230, ¶ 6. The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id*.; *see* 5 U.S.C. § 2302(b)(8). Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *Ingram v. Department of the Army*, 114 M.S.P.R. 43, ¶ 10 (2010).

*Gross mismanagement*

Gross mismanagement means more than de minimis wrongdoing or negligence; it means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Swanson v. General Services Administration,* 110 M.S.P.R. 278, ¶ 11 (2006). Here, the appellant alleged that she disclosed an act of gross mismanagement when she informed senior agency officials that the RA reorganization would remove all current employees from the QA Branch and would make it impossible for the QA Branch to carry out its mission. IAF, Tab 11 at 6, 11, 24. However, the administrative judge found that her disclosure did not rise to the level of gross mismanagement but rather amounted to a mere difference of opinion in a lawfully exercised policy debate. ID at 5-6. He further found that there was no evidence to indicate that the reorganization created a substantial risk of adverse impact on the agency's ability to complete its mission

or that the appellant had a reasonable belief that it did, as evidenced by her statement in her July 19, 2017 email to the DEAC that the organizational changes to RA "will enhance RA's ability to support the mission." ID at 6 (quoting IAF, Tab 11 at 33). The administrative judge also found that, because the agency did not implement the proposed reorganization, her concerns were at best speculative, and even if the agency had implemented the reorganization, it would have only affected about 5 out of 60,000 CBP employees, the appellant would have maintained control over the Branch, and the Executive Director stated that there was a strategy for a transition timeframe to ensure no immediate or significant disruption. ID at 6.

On review, the appellant argues that the administrative judge erred in finding that she did not make a nonfrivolous allegation that she had a reasonable belief that her disclosures regarding the RA reorganization evidenced gross mismanagement. PFR File, Tab 1 at 10-15. Specifically, she argues that the administrative judge took her statement regarding changes enhancing RA's ability to support the mission out of context, improperly resolved conflicting assertions, confused the size of the QA Branch with its significance and contribution, and erred in relying on the fact that the agency did not ultimately implement the reorganization. *Id*. For the reasons that follow, we agree.

As the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has recently stated, "[t]he Board may not deny jurisdiction by crediting the agency's interpretation of the evidence as to whether the alleged disclosures fell within the protected categories or whether the disclosures were a contributing factor to an adverse personnel action." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1369 (Fed. Cir. 2020). Here, we agree with the appellant that the administrative judge erred by crediting the Executive Director's statement in an email to the DEAC that there was a transition timeline for the reorganization to ensure "no immediate or significant disruption," over the appellant's allegation that he told her the reorganization would be effective in 6 days and that all

current QA Branch employees would be moved at that time. PFR File, Tab 1 at 10, 14-15; ID at 6-7 (citing IAF, Tab 11 at 36); IAF, Tab 11 at 4-5, 20, 33. For the purposes of determining whether the appellant has made a nonfrivolous allegation that her disclosure was protected, we accept as true her contention that the Executive Director told her that the RA reorganization was approved, that it would be implemented in 6 days, and that the current QA Branch staff would all be moved at that time. IAF, Tab 11 at 4-5, 11, 20.

We also agree with the appellant that the administrative judge took her statement that some changes would enhance RA's ability to support its mission out of context. PFR File, Tab 1 at 13. Although the appellant stated in her July 19, 2017 email to the DEAC that "[t]here are many exciting changes that will enhance RA's ability to support the mission," it is clear that she was not referring to the RA reorganization described to her by the Executive Director as one of those "exciting changes." IAF, Tab 11 at 33-34. Rather, she stated that she was "disappointed" to learn that the RA reorganization, as described to her by the Executive Director, included the "complete dissolution of the current QA Branch which was slated to occur . . . next Monday" and expressed her concern that QA staff was being moved before the positions could be filled. *Id*. She explained that, without QA staff in place, the Branch could not operate, the Quality Refresher Training could not continue, and the QA Branch Chief would not have support staff to finalize monthly reviews for the fiscal year 2018 RA Peer Review. *Id.* She concluded that, "with a leadership message of no confidence, removal of 100% of staff simultaneously without backfills in place, and an upcoming peer review, I believe the mission will be significantly impacted." *Id*. at 34. Thus, contrary to the administrative judge's finding, the appellant's email does not suggest that she did not believe that the RA reorganization created a substantial risk of adverse impact on the agency's mission. ID at 6.

We further agree with the appellant that the administrative judge erred in finding that the appellant did not make a nonfrivolous allegation that her

disclosure was protected, in part, because the agency did not ultimately implement the reorganization. PFR File, Tab 1 at 15; ID at 6. A disclosure of potential wrongdoing set forth in section 2302(b)(8) may be protected, even if the agency does not carry out the action disclosed, if the disclosure evidences a reasonable belief of imminent wrongdoing.[4] *See Reid v. Merit Systems Protection Board*, 508 F.3d 674, 677-78 (Fed. Cir. 2007) (stating that a reasonable belief that a violation of law is imminent is sufficient to confer Board jurisdiction over an individual right of action appeal); *see also Ward v. Department of the Army*, 67 M.S.P.R. 482, 488-89 (1995) (finding that a disclosure of possible conflict of interest was protected because the potential wrongdoing was "real and immediate"). Here, we find that the appellant has nonfrivolously alleged a reasonable belief that the RA reorganization was imminent. IAF, Tab 11 at 20, 33. Thus, the fact that the agency ultimately did not carry out the reorganization is no bar to finding a nonfrivolous allegation that this disclosure is protected.

Finally, we agree with the appellant that the administrative judge improperly assumed that the fact that the QA Branch had only 5 employees (out of 60,000 employees at CBP) established that its elimination would not have a significant impact on the agency's operation. PFR File, Tab 1 at 14. On review, the appellant explains that, without a QA Branch, the agency could not conform to Government Auditing Standards and would lose its status as a Generally Accepted Government Auditing Standard Compliant Organization, which serves as a "strong deterrent to importer litigation." *Id*. at 11-13. She further explains that the absence of an auditing function would lead to additional legal challenges to the tariffs, fines, and assessments imposed and cost the Government revenue. *Id*. at 11. We find these allegations are sufficient to nonfrivolously allege that the

---

[4] As the Federal Circuit has observed, the "government is far better served by having the opportunity to prevent illegal, wasteful, and abusive conduct than by notice that it may only act to reduce the adverse consequences from such conduct that has already occurred." *Reid v. Merit Systems Protection Board*, 508 F.3d 674, 678 (Fed. Cir. 2007).

appellant reasonably believed that the lack of a QA Branch would have a significant impact on the agency's ability to carry out its mission.

In light of the foregoing and resolving any doubt or ambiguity in favor of finding jurisdiction, we find that the appellant nonfrivolously alleged that she made a protected disclosure of gross mismanagement when she informed agency officials that the RA reorganization slated to be effected in 6 days would remove all current QA Branch staff and would prevent RA from carrying out its mission. *See Swanson*, 110 M.S.P.R. 278, ¶ 11 (finding that the appellant nonfrivolously alleged that she disclosed an act of gross mismanagement when he informed agency officials that his supervisor undermined the ability of the agency's Small Business Office to perform its mission by drastically cutting the number of employees).

*Violation of law, rule, or regulation*

As noted above, the appellant also alleged that she disclosed violations of the collective bargaining agreement and merit system principles when she objected to her supervisor's instructions to take "illegal personnel actions" that would have "serious adverse effects on certain employees' careers." IAF, Tab 11 at 7-8, 11-12. Specifically, she alleged that she objected to the plan to move a certain employee into the QA Branch Chief position because she did not have the requisite experience, training, or skills, as well as to her supervisor's instruction to document her failure. *Id*. at 8, 12, 22-23. She also alleged that she refused the instruction from her supervisor and the Executive Director to assign a CPE employee to perform a QA assignment review and to document her inevitable failure to support a performance-based removal because it violated the merit systems principles and constituted a prohibited personnel practice. *Id*. at 7-8, 23. The appellant alleged that she told her supervisor that she would not assign anyone outside of the QA Branch to do a QA assignment for which she was not trained and would be unable to do. *Id*. at 7-8, 23.

In the initial decision, the administrative judge found that the appellant failed to make a nonfrivolous allegation that she disclosed a violation of law, rule, or regulation because the RA reorganization constituted a policy decision within the discretion of the agency and because an agency has the right to fill vacancies in the competitive service by reassignment. ID at 7. The administrative judge also found that, because the reorganization did not actually take place, the appellant could not have had a reasonable belief that a violation occurred. ID at 7-8. On review, the appellant argues that the administrative judge ignored her allegations that the employees were not qualified for the position or project and that she was ordered to document their failure for the purposes of a performance-based demotion or removal. PFR File, Tab 1 at 16-17. She further argues that these improper assignments constitute clear violations of the merit systems principles.[5] *Id*.

At the jurisdictional stage, the appellant is burdened only with making a nonfrivolous allegation that she reasonably believed that she disclosed a violation of law, rule, or regulation; she is not required to prove that the condition she disclosed actually established a violation of law, rule, or regulation. *See Salerno*, 123 M.S.P.R. 230, ¶ 6. We find that the appellant has met this burden. Specifically, a disinterested observer with the relevant knowledge could reasonably believe that knowingly assigning employees duties that they are not qualified for or able to perform and documenting their inevitable failure in order to take a performance-based action against them violates the merit systems principles, which provide that the Federal work force should be used efficiently and effectively and that employees should be protected against arbitrary action,

---

[5] On review, the appellant does not renew her argument that the actions directed by her supervisor would have violated the employees' bargaining unit rights. PFR File, Tab 1. Nonetheless, we note that a collective bargaining agreement is not a law, rule, or regulation. Rather, it is a contract. *E.g., Giove v. Department of Transportation*, 230 F.3d 1333, 1340 (Fed. Cir. 2000). Accordingly, the appellant has not nonfrivolously alleged that she disclosed a violation of law, rule, or regulation insofar as she informed her supervisor and others that the directed assignments violated the employees' bargaining unit rights. IAF, Tab 11 at 6-8.

5 U.S.C. § 2301(b)(5), (8)(A), and constitutes a prohibited personnel practice under 5 U.S.C. § 2302(b)(12). *See McDonnell v. Department of Agriculture*, 108 M.S.P.R. 443, ¶¶ 10-13 (2008) (finding that the appellant made a nonfrivolous allegation that she made a protected disclosure because her alleged disclosure concerned hiring and selection improprieties under 5 U.S.C. § 2301 that could have constituted prohibited personnel practices under 5 U.S.C. § 2302(b)(6) and (b)(12)); *Schaeffer v. Department of the Navy*, 86 M.S.P.R. 606, ¶¶ 9-10 (2000) (finding that the appellant made a nonfrivolous allegation that he disclosed a violation of law and an abuse of authority regarding personnel selections being made without regard to merit), *overruled on other grounds by Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583, ¶ 9 n. 2 (2010), *overruled by Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677 (2014). We further find that the appellant had a reasonable belief that the violations were imminent, and thus may be protected even though it appears that the agency did not ultimately reassign the employee to the QA Branch Chief position or assign the CPE employee to perform a QA assignment review. *See Reid*, 508 F.3d at 677-78.

In light of the foregoing, we find that the appellant nonfrivolously alleged that she disclosed a violation of law when she refused her supervisor's instructions to assign the CPE employee a QA assignment and to document her failure, and when she objected to the plan to reassign an unqualified employee to the QA Branch Chief position and to document her failure, on the ground that these actions violated the merit systems principles and constituted a prohibited personnel practice.

The appellant nonfrivolously alleged that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(D).

Pursuant to 5 U.S.C. § 2302(b)(9)(D), it is a prohibited personnel practice to take an action against an employee for "refusing to obey an order that would

require the individual to violate a law, rule, or regulation."[6]  PFR File, Tab 1.  For the reasons discussed above, we find that the appellant nonfrivolously alleged that she engaged in protected activity under section 2302(b)(9)(D) when she refused to assign a CPE employee to perform a QA assignment review and to document her failure on the ground that doing so would violate the merit systems principles and constitute a prohibited personnel practice.[7]

The appellant nonfrivolously alleged that the agency subjected her to several covered personnel actions.

As set forth above, the next jurisdictional inquiry is whether the appellant has nonfrivolously alleged that her protected disclosure was a contributing factor in the agency's decision to take, fail to take, or threaten to take or fail to take a personnel action.  *Salerno*, 123 M.S.P.R. 230, ¶ 5; *see* 5 U.S.C. §§ 1221(e)(1), 2302(b)(8).  A "personnel action" is defined as an appointment; a promotion; an action under 5 U.S.C. chapter 75 or other disciplinary or corrective action; a detail, transfer, or reassignment; a reinstatement; a restoration; a reemployment; a performance evaluation under 5 U.S.C. chapter 43 or under Title 38; a decision about pay, benefits, or awards concerning education or training if the education or training reasonably may be expected to lead to an appointment, promotion, performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2)(A); a decision to order psychiatric testing or examination; the implementation or

---

[6] Prior to June 14, 2017, section 2302(b)(9)(D) made it a prohibited personnel practice to take an action against an employee for "refusing to obey an order that would require the individual to violate a law."  *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶¶ 11-12.  However, on June 14, 2017, the President signed into law the Follow the Rules Act (FTRA), which amended section 2302(b)(9)(D) by inserting ", rule, or regulation" after "law."  *Id.*, ¶ 12.  Because the events at issue in this appeal occurred after the effective date of the FTRA, the amended section 2302(b)(9)(D) applies to this appeal.

[7] Although the appellant also contends that she objected to the agency's plan to move the employee into the QA Branch Chief position and to document her failure, she does not allege that she actually refused any instruction in connection with this action.  IAF, Tab 11.  Thus, we do not find that her allegations regarding this violation constitute a nonfrivolous allegation of protected activity under section 2302(b)(9)(D).

enforcement of any nondisclosure policy, form, or agreement; and any other significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A).

Here, the appellant alleged that her supervisor and/or the Executive Director took the following personnel actions against her: sent her a July 29, 2017 "hostile" email admonishing her; issued her a October 30, 2017 letter of counseling and expectations; harassed her and subjected her to a hostile work environment; excluded her from RA weekly management meetings; removed her from the day-to-day responsibilities of two of the three branches under her supervision; and lowered her performance rating for fiscal year 2017. IAF, Tab 1, Tab 11 at 14-16. For the reasons that follow, we find that the appellant has made a nonfrivolous allegation that some of these actions constitute covered personnel actions.

A performance evaluation is a covered personnel action. 5 U.S.C. § 2302(a)(2)(A)(viii); *Frederick v. Department of Veterans Affairs*, 63 M.S.P.R. 563, 572 (1994). Here, the appellant alleged that her "glowing performance review at mid-year became a barely meets expectations," and the record reflects that, for fiscal year 2017, her interim rating was "exceeded expectations" and her final rating was "achieved expectations." IAF, Tab 4 at 41, 11 at 15-16, 89. We find that this lowered performance rating for fiscal year 2017 constitutes a nonfrivolous allegation of a covered personnel action.

We also find that the appellant nonfrivolously alleged that the agency subjected her to a significant change in duties, responsibilities, or working conditions when it removed two of the three branches from her supervision and excluded her from weekly RA management meetings. IAF, Tab 11 at 9 at 23-24; *see Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 17 (finding that the appellant nonfrivolously alleged that the agency subjected him to a significant change in duties, responsibilities, or working conditions when he

alleged that his chain of command directed him to stop attending leadership meetings and performing certain extra duties).

The Executive Director's July 29, 2017 email "admonishing" the appellant for escalating her concerns outside of the chain of command and her supervisor's October 30, 2017 letter of counseling and expectations do not constitute one of the types of personnel actions enumerated in the statute. 5 U.S.C. § 2302(a)(2)(A). Nonetheless, such admonishments short of formal discipline may be considered a threat to take disciplinary action within the meaning of section 2302(b)(8). For example, the Board has found threatened personnel actions when a counseling memorandum warned of specific future charges and discipline if the behavior continued, *Campo v. Department of the Army*, 93 M.S.P.R. 1, ¶¶ 7-8 (2002), and when a supervisor stated that an employee should not expect the same performance rating he had received the year before, *Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 600, 608 (1991), *aff'd*, 981 F.2d 1237 (Fed. Cir. 1992). However, not all general statements setting forth performance expectations and the consequences of failing to meet them, or even similar counseling measures directed at particular employees, constitute actionable "threats" to take adverse action within the meaning of the Whistleblower Protection Act (WPA). *Koch v. Securities and Exchange Commission*, 48 F. App'x 778, 787 (Fed. Cir. 2002).[8]

Here, the appellant alleged that the July 29, 2017 email from the Executive Director was hostile and admonished her for "inappropriately contacting the DEAC and EAC about the reorganization." IAF, Tab 11 at 14, 23. Before OSC, she claimed it was a "counseling or reprimand email." *Id*. at 132. However, the email simply reminded her to work through the proper chain of command before escalating issues to executive management and pointed to several recent instances where she had failed to do so. *Id*. at 98-99. It was not disciplinary in nature and

---

[8] The Board may follow a nonprecedential decision of the Federal Circuit when, as here, it finds its reasoning persuasive. *Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 13 n.9 (2016).

did not threaten any disciplinary action. *Id*. Thus, we find that the email does not constitute a covered personnel action. *See Ingram v. Department of the Army*, 623 F. App'x 1000, 1004 (Fed. Cir. 2015) (holding that a nondisciplinary letter of caution did not constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)); *Reeves v. Department of the Army*, 101 M.S.P.R. 337, ¶ 11 n.* (2005) (finding that an appellant failed to raise a nonfrivolous allegation that a memorandum of counseling was a personnel action when the memorandum informed him of performance deficiencies and required corrective actions, but did not threaten to take disciplinary action).

In the October 30, 2017 letter of counseling, the appellant's supervisor set forth her concerns regarding the appellant's disrespectful and insubordinate conduct and outlined her expectations for the appellant going forward. IAF, Tab 11 at 127-30. She stated that, "[a]s this is the second time I am counseling you regarding your behavior, your failure to improve your conduct may result in disciplinary action" and that "following my instructions is essential to the successful performance in your duties." *Id*. at 129. Although this letter does refer to possible future discipline, the language is conditional in nature and constitutes a reminder that future conduct might result in disciplinary action, which is true for any employee, rather than a specific threat of future discipline. *See Koch*, 48 F. App'x at 787 (stating that "[a] wide range of agency rules, directives, and counseling measures contain the message, implicit or explicit, that failure to follow those directives or to meet expectations may have adverse consequences, including possible discharge" and that not all such general statements constitute threatened action within the meaning of the WPA). Thus, we find that the letter of counseling does not constitute a threat of future disciplinary action and therefore does not constitute a covered personnel action.

The appellant also alleged that her supervisor and the Executive Director harassed her and subjected her to a hostile work environment when they took the following actions: withheld an agenda from her so "her Division could not

prepare and present at a strategy meeting"; denied her a conversation about her annual performance; told the EAC that her "concerns lacked integrity and she was making false claims"; "refused to reallocate training funds for refresher training"; made "openly demeaning comments"; delayed approval of travel authorizations; "physical removal from her office while on [temporary duty assignment]," and informed another supervisor that she "was not wanted back in Regulatory Audit and it would not be good for [her] to return."[9]  IAF, Tab 11 at 8-10, 14, 16, 23-24. Although none of these actions individually constitute a covered personnel action, we find that these allegations of harassment and hostile work environment, in combination with the email and letter of letter of counseling discussed above, amount to a nonfrivolous allegation of a significant change in working conditions. *See Skarada*, 2022 MSPB 17, ¶ 18 (finding that the appellant made a nonfrivolous allegation of a covered personnel action when he alleged that his chain of command harassed him and subjected him to a hostile work environment by, among other things, excluding him from meetings and conversations, subjecting him to multiple investigations, accusing him of "fabricating data" and of a Privacy Act violation, refusing his request for a review of his position for possible upgrade, yelling at him on three occasions, and failing to provide him the support and guidance needed to successfully perform his duties); *see also Holderfield v. Merit Systems Protection Board*, 326 F.3d 1207, 1209 (Fed. Cir. 2003) (suggesting that a number of minor agency actions relating to the appellant's working conditions may amount to a covered personnel action under section 2302(a)(2)(A)(xii) collectively, even if they are not covered personnel actions individually).

---

[9] Although the term "hostile work environment" has a particular meaning in other contexts, allegations of a hostile work environment may establish a personnel action in an IRA appeal only if they meet the statutory criteria under 5 U.S.C. § 2302(a)(2)(A), i.e., constitute a significant change in duties, responsibilities, or working conditions. *Skarada*, 2022 MSPB 17, ¶ 16.

<u>The appellant nonfrivolously alleged that her protected disclosure and activity contributed to the agency's decision to take a personnel action against her.</u>

Having determined that the appellant nonfrivolously alleged that the agency took covered personnel actions against her when it lowered her performance evaluation and subjected her to a significant change in duties, responsibilities, and working conditions, we proceed to the question of whether she nonfrivolously alleged that her protected disclosures and activity contributed to the agency's decision to take these alleged personnel actions. To satisfy the contributing factor criterion, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure was one factor that tended to affect the personnel action in any way. *Ontivero v. Department of Homeland Security*, 117 M.S.P.R. 600, ¶ 21 (2012). One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*.

Here, the record establishes that the appellant's supervisor and the Executive Director were aware of her disclosure of alleged gross mismanagement because they were included on the July 19, 2017 email to the DEAC and EAC and participated in the meeting on July 21, 2017. IAF, Tab 11 at 33-34, 56-62. In addition, the appellant has nonfrivolously alleged that her supervisor was aware of her July 2017 disclosure and activity regarding the merit systems principles violation because she directed her objections to her supervisor and refused her instruction to assign a QA review assignment to a non-QA employee and to document her failure. *Id*. at 7-8, 12. Because all of the personnel actions at issue occurred within days or several months of the appellant's July 2017 disclosures and activity, we find that the appellant has satisfied the knowledge/timing test

and has made a nonfrivolous allegation of contributing factor. *See Ontivero,* 117 M.S.P.R. 600, ¶ 23 (finding that that a personnel action taken within approximately 1 to 2 years of the appellant's disclosures satisfies the knowledge/timing test).

The appellant has established jurisdiction over her IRA appeal and is entitled to a hearing.

In light of the foregoing, we find that the appellant has established Board jurisdiction over this IRA appeal by proving exhaustion of her OSC remedies and nonfrivolously alleging that she made at least one protected disclosure that was a contributing factor in at least one covered personnel action. *See Groseclose v. Department of the Navy,* 111 M.S.P.R. 194, ¶ 15 (2009). Accordingly, she is entitled to the hearing she requested. *Id*.

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:    _____
                  Jennifer Everling
                  Acting Clerk of the Board
Washington, D.C.